BARBARA JEWETT *v.* DENIS JEWETT
(SC 16937)
(SC 16938)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

---

Argued May 22—officially released September 9, 2003

*Bruce A. Chamberlain,* for the appellant (defendant).

*Stephen E. Reck,* with whom, on the brief, was *Linda L. Mariani,* for the appellee (plaintiff).

*Opinion*

NORCOTT, J. The defendant, Denis Jewett, appeals[1] from the judgment of the trial court dissolving his marriage to the plaintiff, Barbara Jewett, and ordering a property distribution pursuant to General Statutes § 46b-81[2] and attorney's fees pursuant to General Stat-

---

[1] The defendant first appealed from the judgment of the trial court granting the plaintiff's motion for contempt and for sanctions to the Appellate Court. Thereafter, the defendant appealed from the judgment of the trial court dissolving the parties marriage. The defendant's motion to consolidate the appeals was granted by the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 46b-81 provides: "(a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect.

"(b) A conveyance made pursuant to the decree shall vest title in the purchaser, and shall bind all persons entitled to life estates and remainder interests in the same manner as a sale ordered by the court pursuant to the provisions of section 52-500. When the decree is recorded on the land records in the town where the real property is situated, it shall effect the transfer of the title of such real property as if it were a deed of the party or parties.

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of

utes § 46b-62.[3] The issues decided in this appeal are whether the trial court: (1) abused its discretion by excluding, as irrelevant, evidence that the defendant claimed could be used to establish what portion of a settlement award that resulted from prior litigation was compensation for future earnings and, therefore, not part of the marital estate; (2) properly concluded that a portion of that settlement award received as compensation for future earnings should be included in the marital estate; (3) properly precluded the defendant from presenting extrinsic evidence regarding his settlement agreement on the ground that such evidence would violate the parol evidence rule; (4) properly allowed the plaintiff to submit an amended financial affidavit; (5) abused its discretion by allowing the plaintiff to testify about the reasons for the breakdown of the marriage; (6) abused its discretion by admitting into evidence an exhibit summarizing the plaintiff's financial contribution to improvements to the marital home; (7) made factual findings regarding the plaintiff's financial contributions to the home and family budget, the defendant's fault for the breakdown of the marriage, and the value of the defendant's personal assets that were unsupported by the record; and (8) abused its discretion when it awarded the plaintiff $7500 in attorney's fees.[4]

the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

[3] General Statutes § 46b-62 provides in relevant part: "In any proceeding seeking relief under the provisions of this chapter . . . the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ."

[4] The defendant also claims on appeal that the trial court improperly ordered him to reinstate his work-related life insurance policy with the plaintiff named as the sole beneficiary and that he provide such insurance until his retirement. As counsel for the defendant explained at oral argument

The defendant also claims that the trial court improperly found him in contempt and contends that the subpoena with which he refused to comply was overly broad, unduly burdensome, untimely and constituted intentional harassment. We affirm the judgment of the trial court.

The trial court's findings of fact may be summarized as follows. The parties were married on October 14, 1974, in Mystic. In 1975, the parties purchased a home in Salem and, by agreement between them, the plaintiff took sole title to the house in 1976. The plaintiff has been a registered nurse since 1967, and has worked at various hospitals. At the time of trial, the plaintiff was employed as a director of nurses at a nursing home. The plaintiff also received a bachelor's degree in zoology in 1984 from Connecticut College. The defendant, who had graduated from the United States Merchant Marine Academy, was employed at the Electric Boat Division (Electric Boat) of General Dynamics Corporation (General Dynamics) as a marine engineer for the majority of the parties' marriage. The parties have no children of their own, but the plaintiff had a daughter, who is now an adult, from a previous marriage. The defendant adopted her soon after the parties were married. At the time of the dissolution action, the plaintiff was fifty-

before this court, the defendant has retired. Accordingly, the defendant's claim is moot. See *In re Romance M.*, 229 Conn. 345, 357, 641 A.2d 378 (1994) ("[w]hen, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot").

Additionally, the defendant asks this court to review the trial court's postjudgment award to the plaintiff of $2500 in attorney's fees to defend this appeal. Because, however, the defendant did not file an amended appeal from the trial court's postjudgment order, as required by Practice Book § 61-9, we need not review the defendant's claim challenging the propriety of that order. See *Brown* v. *Brown*, 190 Conn. 345, 350–51, 460 A.2d 1287 (1983) (refusing to consider defendant's claim challenging trial court's postjudgment order awarding attorney's fees because he failed to comply with Practice Book § 61-9).

five years old and the defendant was fifty-four years old. Although the plaintiff testified that she had some concerns over the future state of her health, the defendant testified that he was in good health.

During his employment at Electric Boat, the defendant held a number of positions, including director of nuclear quality control. Shortly after attaining this position, however, the defendant was relieved of his quality control duties, but his salary was not diminished. As a result of this change, the defendant, in June, 1994, brought an action against General Dynamics, the corporate parent of Electric Boat, for wrongful demotion. In 1998, a jury returned a verdict in favor of the defendant for $775,000. The jury award was not broken down into specific categories; rather, it was a lump sum award. After the jury rendered its verdict, General Dynamics appealed. Thereafter, the parties reached a settlement agreement that required General Dynamics to pay the defendant a lump sum of $337,260.02, and also to pay the defendant's attorneys $262,739.98 as attorney's fees, resulting in a total settlement award of $600,000. Although the settlement award had been invested in a Merrill Lynch account, the defendant converted it into cash soon after the plaintiff filed this dissolution action. Moreover, the trial court found that, beginning in May, 1999, the defendant embarked on an intentional course of conduct that resulted in converting several assets into cash in order to have a " 'war chest' " with which to defend the marital dissolution proceedings.

The plaintiff filed this dissolution action seeking a dissolution of the marriage and an equitable property settlement in accordance with § 46b-81. In its memorandum of decision, the trial court noted the plaintiff's substantial contribution to the home in the form of capital improvements to the property and the payment of real estate taxes and insurance premiums. Consequently, the trial court ordered that the plaintiff retain

the marital home. The trial court also ordered the defendant to transfer 40 percent of the value of his pension as of the date of the dissolution to the plaintiff. The trial court also awarded the defendant's one-half interest in the parties' joint retirement account to the plaintiff. The trial court ordered the defendant to reinstate his work-related life insurance to its original amount with the plaintiff named as the sole beneficiary so long as the defendant was employed. See footnote 4 of this opinion. Moreover, the trial court ordered the defendant to pay $7500 in attorney's fees to the plaintiff's attorney because it determined that much of the accrued fees were caused by the defendant's failure "promptly and candidly [to] comply with numerous motions and discovery."

The trial court also awarded the plaintiff $260 per week in alimony, to be paid until she receives her share of the defendant's pension. The parties were allowed to retain their own automobiles and the balances of their separate checking accounts. The trial court ordered that both parties retain their personal property listed on their financial affidavits. Additionally, the defendant and the plaintiff were each allowed to retain their separate individual retirement accounts.

The defendant was permitted to retain the cash proceeds from his action against General Dynamics as well as any other cash funds in his possession. Finally, the court rendered judgment dissolving the parties' marriage on the ground of irretrievable breakdown. This appeal followed. Additional facts will be set forth as necessary.

I

EXCLUSION OF EVIDENCE REGARDING THE
GENERAL DYNAMICS LITIGATION

The following additional facts are necessary for the resolution of the defendant's claim that the trial court

improperly excluded evidence regarding his litigation with General Dynamics. The defendant filed a notice of expert witnesses disclosing his intent to call Walter King, a financial expert, and Thomas Riley, an attorney, as witnesses in the marital dissolution proceedings. The notice stated that King would testify that two thirds of the jury award received by the defendant in his action against General Dynamics was compensation for future earnings. The defendant claimed that the portion of the subsequent settlement award that could be considered future earnings was nonmarital property and, therefore, not subject to division. The defendant also claimed that Riley, who had represented the defendant in the General Dynamics litigation, would testify that 90 percent of the proceeds received by the defendant was for future earnings.

In response to these disclosures, the plaintiff moved in limine to preclude as irrelevant the testimony of both King and Riley. The plaintiff claimed that any economic analysis of the jury verdict was irrelevant because that verdict subsequently was withdrawn after the parties had reached a settlement agreement. The plaintiff also claimed, in her motion in limine, that any testimony regarding the settlement agreement would violate the parol evidence rule.[5]

---

[5] The defendant claims that the trial court improperly excluded as violative of the parol evidence rule certain extrinsic evidence regarding his settlement agreement with General Dynamics. Specifically, the defendant contends that the trial court improperly precluded the testimony of his experts, King and Riley, which could have demonstrated that a majority of his settlement award was compensation for future income and, therefore, excluded from the marital estate. In response, the plaintiff claimed, in her motion in limine to preclude King and Riley from testifying, that any extrinsic evidence regarding the settlement agreement, including the testimony of King or Riley, would violate the parol evidence rule because the written document constituted the complete understanding of the parties. Thereafter, the trial court allowed Riley to testify about how he presented the evidence of damages to the jury in the litigation involving the defendant and General Dynamics. Moreover, the trial court allowed the defendant to testify about his belief that the entire settlement award constituted compensation for future wages.

The trial court denied the plaintiff's motion in limine but, after the plaintiff moved for reconsideration, granted the motion as to King. The trial court concluded that King's testimony was irrelevant to the dissolution proceedings because of the subsequent settlement, and speculative because there was no way to divine how the jury came to its conclusion on damages and what portion of the subsequent settlement was for future income. The trial court, however, allowed Riley to testify about how he presented the claim for damages to the jury in the General Dynamics litigation,[6] but sus-

---

We first note that, as described in greater detail later in this opinion, we conclude that the trial court did not abuse its broad discretion in determining that the testimony of King and Riley about the portion of the settlement award that constituted compensation for future wages was irrelevant. Thus, our determination of the defendant's claim that the trial court improperly concluded that the testimony of King and Riley would violate the parol evidence rule is guided by our determination that the evidence was nevertheless irrelevant.

Moreover, even if the trial court improperly concluded that the testimony of King and Riley would violate the parol evidence rule, we conclude that the defendant was not harmed by that ruling. Over the objection of the plaintiff, the defendant testified about his specific financial harm and that the jury award that he received constituted "all future losses." The defendant also testified about the factors he considered when making the decision subsequently to settle the litigation. Moreover, as discussed in more detail later in this opinion, Riley testified extensively regarding the method by which he presented the issue of damages to the jury, and the fact that the majority of the award constituted compensation for future wages. With this background in mind, we conclude that, even if the trial court improperly concluded that the testimony of King and Riley violated the parol evidence rule, it was not likely to have affected the result because the defendant was allowed nevertheless to present extrinsic evidence regarding the settlement agreement. See *Urich* v. *Fish*, 261 Conn. 575, 580–81, 804 A.2d 795 (2002) ("[t]he harmless error standard in a civil case is whether the improper ruling would likely affect the result" [internal quotation marks omitted]); see also *Scanlon* v. *Connecticut Light & Power Co.*, 258 Conn. 436, 448, 782 A.2d 87 (2001) ("[w]e have often stated that before a party is entitled to a new trial . . . he or she has the burden of demonstrating that the error was harmful" [internal quotation marks omitted]).

[6] Specifically, Riley testified as follows: "The way in which I presented the evidence of damages was multifaceted, but, principally, I relied upon [the defendant's] salary and other wage records. I relied upon [the defendant's] testimony concerning his past salary and earnings history. And I relied upon

tained the plaintiff's objections to questions regarding the valuation of the jury's verdict and the subsequent settlement agreement.

On appeal, the defendant claims that the trial court improperly excluded evidence regarding his litigation with General Dynamics. Specifically, the defendant claims that the trial court improperly concluded that the expert testimony of King was irrelevant in the marital dissolution proceedings. The defendant also contends that the trial court improperly precluded the testimony of Riley as irrelevant. Moreover, the defendant claims that the trial court improperly refused to take judicial notice of the trial transcript of the defendant's action against General Dynamics.[7] The plaintiff claims, in

an expert witness [King], who performed . . . an analysis of his damages for us." Moreover, Riley testified that he "essentially projected the earnings curve . . . for [the defendant] from the beginning of his work through . . . 1992, when he was demoted . . . and we adjusted that for inflation. And then we looked at what was a reasonable projection of what he would have earned as a GS 9 through the end of his planned retirement, which I think was in 2012. And that was adjusted for inflation. . . . The third component of the damages is, '[w]hat was the effect upon his eventual pension of the lost future earnings that resulted from his demotion?' And the pension is a function of salary. So that, to the extent that he would earn a lesser salary in the GS 12 position for the remainder of his career, it would affect his pension earnings. And the expert attempted to calculate those, based upon his review of the General Dynamics retirement plan documents and commonly accepted economic principles. And the gentleman presented testimony to the jury on this. [The defendant] presented testimony. I introduced various General Dynamics records on this subject. And that was the basis of his claim for out-of-pocket damages when it finally came time to ask the jury to return a verdict."

[7] The defendant claims that the trial court improperly refused to take judicial notice of the transcripts of the defendant's action against General Dynamics. The defendant contends that the transcripts would reveal that a substantial portion of the jury award was compensation for future wages.

"There is no question that the trial court may take judicial notice of the file in another case, whether or not the other case is between the same parties. . . . [I]t is understood that matter[s] which it is claimed the court should judicially notice should ordinarily be called to its attention by a party seeking to take advantage of it in the course of presenting evidence in the case so that, if there is ground upon which it may be contradicted or explained, the adverse party will be afforded an opportunity to do so . . . ."

response, that because evidence that was presented to the jury in the defendant's claim against General Dynamics had no relevance to the parties' dissolution claim, and because any analysis of the settlement agreement is speculative, the trial court properly excluded the evidence. We agree with the plaintiff.

"It is well settled that the trial court's evidentiary rulings are entitled to great deference. . . . The trial court is given broad latitude in ruling on the admissibility of evidence, and we will not disturb such a ruling unless it is shown that the ruling amounted to an abuse of discretion." (Internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 28–29, 807 A.2d 955 (2002); *Pestey* v. *Cushman*, 259 Conn. 345, 368–69, 788 A.2d 496 (2002). "[Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *State* v. *Wargo*, 255 Conn. 113, 123, 763 A.2d 1 (2000).

The law defining the relevance of evidence is also well settled. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . [E]vidence need not exclude all other possibilities [to be relevant]; it is sufficient if it tends to support the conclusion [for which it is offered], even

(Citations omitted; internal quotation marks omitted.) *Drabik* v. *East Lyme*, 234 Conn. 390, 398, 662 A.2d 118 (1995).

Moreover, "[j]udicial notice . . . meets the objective of establishing facts to which the offer of evidence would normally be directed. . . . Thus, a trial court's determination not to take judicial notice is essentially an evidentiary ruling. . . . Our role in reviewing evidentiary rulings of the trial court is settled. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) Id., 398–99. Mindful of the numerous volumes of transcripts the defendant asserted that the trial court should have taken judicial notice of, we find nothing in the record to indicate that the trial court abused its broad discretion in refusing to do so.

to a slight degree. . . . [T]he fact that evidence is susceptible of different explanations or would support various inferences does not affect its admissibility, although it obviously bears upon its weight. So long as the evidence may reasonably be construed in such a manner that it would be relevant, it is admissible. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Citation omitted; internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, supra, 262 Conn. 29. We conclude that the trial court did not abuse its discretion in precluding the testimony of the defendant's expert witnesses as irrelevant and speculative.

The defendant offered the testimony of King and Riley as support for his claim that a substantial portion of the settlement he had received was for future wages and, therefore, not subject to division as part of the marital estate. The defendant asserted that through "algebraic calculations" and the testimony of how the case was presented to the jury, by King and Riley, respectively, he could determine what amount of the jury award, and the subsequent settlement, had been for future wages. As the plaintiff points out, however, parties involved in litigation may settle for a number of reasons, including the opportunity to forgo future appeals. Accordingly, the trial court did not abuse its broad discretion in precluding the defendant's witnesses from testifying regarding the portion of his settlement with his employer that was for future wages.

## II

## INCLUSION OF THE SETTLEMENT AWARD IN THE MARITAL ESTATE

The defendant next claims that the trial court improperly concluded that the settlement award the defendant

had received as a result of his prior litigation with General Dynamics was part of the marital estate and, therefore, subject to division. Specifically, the defendant claims that, although the trial court awarded him the entire settlement amount, he otherwise received an inequitable division of the remaining marital property because a portion of the settlement award that was compensation for future wages should have been excluded from the division. The plaintiff claims, in response, that the trial court properly considered the settlement award as part of the marital estate. We agree with the plaintiff.[8]

Before reaching the defendant's claim on appeal, we address the applicable standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Bender* v. *Bender*, 258 Conn. 733, 739–40, 785 A.2d 197 (2001).

---

[8] We note that the trial court did not conclude specifically whether a portion of the settlement award received by the defendant was considered marital property. Instead, the trial court, as discussed in part I of this opinion, determined that any attempt to parcel out the settlement award into future wages would have been speculative and irrelevant. Thereafter, the trial court awarded the entire portion of the award to the defendant. The defendant claims that he would have received *additional* marital property had the trial court excluded that portion of the settlement award that was for future income from the distribution. Moreover, the defendant does *not* claim that the *entire* settlement award should have been excluded from division, but merely that which constituted compensation for future wages. In this light, our determination on this claim is guided by our determination in part I of this opinion, namely, that the trial court did not abuse its discretion by excluding the evidence intended to parcel out what portion of the settlement award was compensation for future wages as irrelevant and speculative.

Moreover, the trial courts are empowered to "deal broadly with property and its equitable division incident to dissolution proceedings." (Internal quotation marks omitted.) Id., 743. Thus, "[i]nterpreting the term property broadly is also consistent with the purpose of equitable distribution statutes generally. It is widely recognized that the primary aim of property distribution is to recognize that marriage is, among other things, a 'shared enterprise or joint undertaking in the nature of a partnership to which both spouses contribute— directly and indirectly, financially and nonfinancially— the fruits of which are distributable at divorce.' " *Krafick* v. *Krafick*, 234 Conn. 783, 795, 663 A.2d 365 (1995).

"As a general framework, '[t]here are three stages of analysis regarding the equitable distribution of each resource: first, whether the resource is property within § 46b-81 to be equitably distributed (classification); second, what is the appropriate method for determining the value of the property (valuation); and third, what is the most equitable distribution of the property between the parties (distribution). [Id., 792–93].' " *Bender* v. *Bender*, supra, 258 Conn. 740.

Additionally, the determination of what constitutes property under § 46b-81 raises an issue of statutory interpretation. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Thus, this process requires us to consider all rele-

vant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. Thus, we do not follow the plain meaning rule.

"In performing this task, we begin with a searching examination of the language of the statute, because that is the most important factor to be considered. In doing so, we attempt to determine its range of plausible meanings and, if possible, narrow that range to those that appear most plausible. We do not, however, end with the language. We recognize, further, that the purpose or purposes of the legislation, and the context of the language, broadly understood, are directly relevant to the meaning of the language of the statute.

"This does not mean, however, that we will not, in a given case, follow what may be regarded as the plain meaning of the language, namely, the meaning that, when the language is considered without reference to any extratextual sources of its meaning, appears to be the meaning and that appears to preclude any other likely meaning. In such a case, the more strongly the bare text supports such a meaning, the more persuasive the extratextual sources of meaning will have to be in order to yield a different meaning." (Citations omitted; internal quotation marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 577–78, 816 A.2d 562 (2003).

Against this background, we conclude that the inclusion of the entire settlement award in the marital property estate was not an abuse of discretion. "The distribution of assets in a dissolution action is governed by § 46b-81, which provides in pertinent part that a trial court may assign to either the husband or the wife all or any part of the estate of the other. . . . In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party . . . shall consider the length of the marriage

. . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and *the opportunity of each for future acquisition of capital assets and income.* The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. . . . This approach to property division is commonly referred to as an all-property equitable distribution scheme. . . . [Section 46b-81] does not limit, either by timing or method of acquisition or by source of funds, the property subject to a trial court's broad allocative power." (Citation omitted; emphasis added; internal quotation marks omitted.) *Bender* v. *Bender*, supra, 258 Conn. 741–42.

In *Smith* v. *Smith*, 249 Conn. 265, 286, 752 A.2d 1023 (1999), we concluded that the trial court properly had divided proceeds from a settlement award when it dissolved the parties' marriage. A factor in that decision was the fact that the defendant had earned an enforceable right to the compensation that had been the subject of the settlement award during the time the parties were married. Id. Moreover, we stated: "The fact that the plaintiff may not have helped in the acquisition of the settlement does not vitiate the fact that the right to the asset had been earned mostly during the parties' marriage." Id. Thus, the asset, namely, a settlement award arising out of a breach of a severance agreement, properly was considered marital property subject to division because the right to the asset had accrued while the parties were married. See also *Bornemann* v. *Bornemann*, 245 Conn. 508, 517–18, 752 A.2d 978 (1998) (stock options, like pension benefits, were marital property because they represented presently existing interest in that they created in holder enforceable contract right).

The trial court's comprehensive memorandum of decision demonstrates that it evaluated all of the relevant statutory factors in making its decision distributing the marital property. Specifically, the trial court found that during the litigation with General Dynamics, the plaintiff was supportive of the defendant and that the plaintiff attended the trial and "endeavored to be supportive" on "numerous and diverse" occasions. The trial court also acknowledged that the plaintiff was willing to allow the defendant to retain any cash that was in his possession, including the proceeds from the litigation, and that both the plaintiff and the defendant had contributed to the initial attorney's fees in the General Dynamics litigation, a contribution that totaled $90,000. Additionally, because the trial court properly excluded irrelevant evidence intended to parcel out any alleged future wages from the lump sum settlement received by the defendant, the entire settlement, which was received during the parties' marriage, was property subject to division under § 46b-81. The trial court ultimately allowed the defendant to retain the cash proceeds from the action involving General Dynamics as well as other cash funds in his possession, amounting to a total, as of the date of dissolution, of $261,528, while it awarded the marital home, valued by the trial court at $177,500, and 40 percent of the value of the defendant's pension, to the plaintiff. We conclude, therefore, that the trial court did not abuse its broad discretion when allocating the marital property in the present dissolution proceedings.

## III

## MISCELLANEOUS EVIDENTIARY CLAIMS

The defendant next claims that the trial court abused its discretion by admitting certain evidence. Specifically, the defendant claims that the trial court improperly admitted into evidence: (1) the plaintiff's amended

financial affidavit; (2) testimony regarding the plaintiff's belief that the defendant was at fault for the breakdown of the marriage; and (3) an exhibit summarizing the plaintiff's claimed financial contributions to the marital home. The plaintiff contends that the evidence properly was admitted. We agree with the plaintiff on all of these claims. We review these claims under the abuse of discretion standard explicated in part I of this opinion.

## A

### Financial Affidavit

The defendant first claims that the trial court improperly admitted into evidence the plaintiff's amended financial affidavit. On November 9, 2001, the third day of a lengthy trial, the plaintiff submitted to the court an amended financial affidavit, which reflected her salary for a job that she had accepted two days earlier. The affidavit revealed that she would be earning $100 more per week than she had at her previous job. On cross-examination, the defendant questioned the plaintiff extensively about her new salary, and alleged that she was in fact earning less money at her new job, which did not offer overtime pay like her last position. Moreover, the defendant offered into evidence all of the plaintiff's prior financial affidavits, tax returns and pay stubs. The defendant also asserted that the amended financial affidavit was speculative because the plaintiff had not yet started her new job.

Our review of the financial affidavit and the transcript reveals nothing to persuade us that the trial court abused its broad discretion in allowing the plaintiff to submit an amended financial affidavit. The defendant extensively cross-examined the plaintiff regarding her financial affidavit and her potential earning capacity. Moreover, the defendant submitted numerous exhibits of the plaintiff's prior pay stubs, allegedly to show that she was able to earn more money than was listed on

the amended financial affidavit. The trial court considered all this evidence when dividing the parties' property. Accordingly, the trial court did not abuse its discretion when it allowed the plaintiff to submit an amended financial affidavit.[9]

## B

### Evidence of Fault

The plaintiff testified,[10] on direct examination, regarding the reasons she believed that the marriage had bro-

[9] The defendant also claims that the plaintiff wilfully restricted her income by accepting a job in which she could no longer earn overtime pay. The defendant's claim is without merit. First, there is absolutely nothing in the record to indicate that the plaintiff wilfully sought out employment that would decrease her salary in order to collect more alimony. In fact, her financial affidavit revealed that her salary was actually more than $100 per week higher at her new position. Second, as the trial court noted, the parties are entitled to pursue any employment they choose so long as they do not fraudulently restrict their earning capacity for the purpose of avoiding support obligations. See *Schmidt* v. *Schmidt*, 180 Conn. 184, 189–90, 429 A.2d 470 (1980) (concluding that it was appropriate to enter award of alimony based on earning capacity rather than actual income because of evidence that defendant wilfully depleted earnings with "view toward denying or limiting the amount of alimony to be paid to a former spouse").

The defendant also claims that the trial court improperly admitted the amended financial affidavit because it did not conform to Practice Book § 25-30 (a), which requires a party to a dissolution of marriage proceeding to file with the court, at least five days before the hearing, a sworn statement of current income, expenses, assets and liabilities. The defendant claims that, because the amended financial affidavit was filed on the second day of trial, the trial court improperly admitted it into evidence.

This claim is also without merit. Our review of the record reveals that the plaintiff's original financial affidavit was filed on October 9, 2001, one month before trial. Moreover, the only change to the affidavit was an increase of $100 per week to reflect the plaintiff's new position. Additionally, Practice Book § 25-30 (a) allows the trial court to render permanent orders, including judgment, even in the absence of the sworn statement. The admission into evidence, therefore, of an amended financial affidavit, which did not prejudice the defendant, was not an abuse of discretion.

[10] The plaintiff testified that, among other things, the defendant's behavior toward her deteriorated shortly after his litigation with General Dynamics began. The plaintiff also testified that the defendant was controlling and did not involve her appropriately in family decisions.

ken down. Thereafter, the defendant objected to this line of questioning, claiming that, in pretrial interrogatories,[11] the plaintiff never had alleged that the defendant was at fault for the breakdown of the marriage. Therefore, the defendant claimed, the plaintiff could not, at trial, claim that his actions led to the breakdown of the marriage. The plaintiff alleges that the defendant had the opportunity, and in fact actually did cross-examine

[11] Specifically, the defendant relies on the plaintiff's answer to interrogatory number eighty-two for support of his claim that the plaintiff was barred from asserting that his conduct was the reason for the breakdown of the marriage. That interrogatory asked, " 'What conduct, if any, on your part contributed to the breakdown of the marriage?' " The plaintiff answered: "There has been nothing put into this marriage since June 5, 1992. There has been very little fun, and a lot of inattention to one another. All of the energy has been pulled out of us, and so the relationship over the past [eight] years. There was the stress of my broken ankle. [The defendant's] loss of his job. A wedding. There has been the trial and work on *Jewett* v. *General Dynamics*; there has been my loss of a job and struggle to 'right' myself. There has been the commitment to [the plaintiff and defendant's son-in-law and daughter] and now two grandchildren. There is declining health of [the defendant's] parents and my mother, there is the job that [the defendant] has to do daily at [Electric Boat] where he is unfulfilled and not stimulated. My brother's illness and the resultant medical concerns for him and the biologically linked family. [The defendant's] brother's suicide. There are financial retirement considerations. There was the death of my father and a difficult estate settling that followed. In short, we both have now and have had since 1992 too much to contend with.

"In all of this, communication between us declined over time and is now non-existent. From the lack of communication the trust base has been seriously damaged. Whatever is said or done by one party hurts the other party. Some of the hurt may be from misinterpretation of the other parties' motives or intentions. We are unable to support each other emotionally or physically."

Even if we were to conclude that the plaintiff was limited to asserting allegations of fault that were stated in her answers to interrogatories, we dispute the defendant's claim that this answer did not allege any fault. The answer clearly indicated that the defendant's employment and subsequent litigation was a factor in the breakdown of the marriage. Moreover, the question did not ask whether the plaintiff thought the defendant was at fault; but rather, asked what conduct on her part led to the breakdown of the marriage. Thus, the trial court did not abuse its discretion when it allowed the plaintiff to testify regarding her impressions of the reason for the breakdown of the marriage.

her regarding her testimony. Moreover, the plaintiff contends that the defendant cannot allege that he unfairly was surprised by the testimony because he never sought further expansion of her answers to the interrogatories and never deposed her. The trial court overruled the defendant's objection and allowed the plaintiff to testify regarding her impression as to the cause of the breakdown of the marriage.[12]

The defendant's claim is without merit. As the plaintiff notes, interrogatories are unlike admissions and pleadings, and may be contradicted through examination. *Piantedosi* v. *Floridia*, 186 Conn. 275, 278, 440 A.2d 977 (1982). Additionally, the plaintiff extensively was cross-examined by the defendant regarding her belief as to reasons for the breakdown of the marriage. Accordingly, our review of the record persuades us that the trial court did not abuse its discretion by allowing the plaintiff to testify regarding her belief as to the reasons for the breakdown of the marriage.

C

### Evidence of the Plaintiff's Contribution to the Marital Home

The defendant claims that the trial court improperly admitted into evidence a summary of the plaintiff's financial contributions to the marital home. Specifically, the defendant contends that the exhibit should have been excluded as irrelevant because there was no evidence to show that the funds used to pay for the improvements came solely from the plaintiff's income. The plaintiff claims that the trial court properly admitted the exhibit. We agree with the plaintiff.

---

[12] In overruling the defendant's objection to the plaintiff's testimony, the trial court noted: "To claim now that—the direct examination of the witness with regard to her understanding, or her impression as to the cause of the breakdown should be limited by virtue of the outstanding interrogatories I think is not well-founded."

As noted previously, "[r]elevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue." (Internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, supra, 262 Conn. 29. In order to determine the contributions of both parties to the marital estate and to divide equitably the property of the estate, it was well within the trial court's discretion to admit an exhibit that listed the plaintiff's contributions to the marital home. Moreover, the defendant had ample opportunity to cross-examine the plaintiff regarding her claim that she had contributed financially to the marital home. In addition, the trial court noted the substantial contribution made to the house by the plaintiff when awarding the home to her, which persuades us that the exhibit was indeed relevant and aided the trier of fact in the determination of an issue. Thus, the trial court did not abuse its discretion by admitting an exhibit that summarized the plaintiff's contribution to the marital home.

## IV

## FACTUAL FINDINGS

The defendant next claims that the trial court made several findings of fact that were not supported by the evidence. Specifically, the defendant claims that the trial court improperly found that: (1) the plaintiff had contributed significantly to the marital home and budget, and solely had funded their daughter's education; (2) the defendant's conduct had led to the breakdown of the marriage; and (3) the value of the defendant's personal assets was greater than it actually was. The plaintiff contends that the trial court's decision was supported by sufficient evidence. We agree with the plaintiff.

We begin by setting forth the relevant standard of review. "The scope of our appellate review depends upon the proper characterization of the rulings made

by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous." (Internal quotation marks omitted.) *In re Joshua S.*, 260 Conn. 182, 216–17, 796 A.2d 1141 (2002). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, supra, 262 Conn. 23.

Our review of the record reveals that the trial court's findings of fact were not clearly erroneous. To begin, the trial court, when distributing the marital home to the plaintiff, acknowledged the defendant's "contribution of the original deposit and to the discharge of the mortgage . . . ." The trial court concluded, however, that the plaintiff had made substantial contributions to the marital home as well, including several capital improvements and the payment of real estate taxes and insurance premiums. Moreover, the trial court was mindful of the plaintiff's emotional attachment to the home and the defendant's pronounced intention to relocate to South America or Central America.

Additionally, the defendant claims that the trial court improperly found that the plaintiff solely had provided for the education of their daughter. The trial court found that the "plaintiff's credible testimony was to the effect that, and it would appear that she funded, paid and was responsible for the educational attainments" of the parties' daughter. This fact, however, is well supported by the testimony of both the plaintiff and the defendant.[13] Accordingly, the court's finding was not clearly erroneous.

---

[13] Specifically, the defendant testified that he "had all of the family and household expenses covered with [his] salary. And what [the parties] agreed to do was that she would dedicate her salary to paying the tuition bills, and

The defendant next claims that the trial court improperly "made erroneous findings of fact specifically related to [the] defendant's fault" for the breakdown of the marriage. We first note that the trial court made no specific finding of fault; rather, the trial court dissolved the parties' marriage on the grounds of irretrievable breakdown. Moreover, our review of the record indicates that the trial court's findings of fact regarding the defendant's conduct, specifically his depletion of assets and that he had slapped the plaintiff, were amply supported by the testimony and the record.[14]

Finally, the defendant claims that he was credited twice for the same personal property that, in essence, "counted against his asset award . . . ." Specifically, the defendant claims that the trial court improperly found that the $50,000 value of the personal property that the parties agreed was the defendant's was in addition to the $261,528 listed on his financial affidavit. The defendant claims that the $50,000 was in fact included within the $261,528. We first note that the defendant has not set forth any specific finding of fact in which the trial court asserted that the $50,000 was not included in the amount listed in the defendant's financial affida-

the room and board bills . . . she would have saved from her salary whatever the coming semester's tuition, room and board bill would be in advance."

[14] For instance, on the defendant's financial affidavit dated July 14, 2000, the defendant, under "other personal property," stated that it was "all too numerous to list individually," but that in aggregate it was worth $325,000. Subsequently, on the defendant's October 30, 2001, financial affidavit, the personal property category had been reduced to $261,528. The trial court reasonably could have found, solely on the basis of these affidavits, that the defendant had been depleting his assets.

Moreover, it appears that the trial court merely was summarizing testimony when it stated that "[t]he defendant denied ever physically assaulting the plaintiff even though the plaintiff represented that on at least one occasion the defendant had slapped her." In this light, the trial court's statement was not so much a finding of fact but a summary of relevant testimony and its inclusion in the memorandum of decision was not clearly erroneous.

vit. Additionally, the trial court's valuation of the parties' assets finds ample support in the record.[15] Accordingly, we conclude that the trial court's findings of fact were not clearly erroneous.

## V

## AWARD OF ATTORNEY'S FEES

The defendant next claims that the trial court improperly awarded the plaintiff $7500 in attorney's fees. The plaintiff claims, in response, that the record supports the trial court's award of attorney's fees. We agree with the plaintiff.

Section 46b-62 governs the award of attorney's fees in dissolution proceedings and provides that "the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in [General Statutes §] 46b-82." These criteria include "the length of the marriage, the causes for the . . . dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to [§] 46b-81 . . . ." General Statutes § 46b-82. In making an award of attorney's fees under § 46b-82, "[t]he court is not obligated to make express findings on each of these statutory criteria." *Weiman* v. *Weiman*, 188 Conn. 232, 234, 449 A.2d 151 (1982).

---

[15] In addition, any confusion on the part of the trial court regarding the defendant's claim that the $50,000 worth of personal property was included in the $261,528 amount was because of his own financial affidavit. Specifically, the defendant merely listed his personal property as "too numerous to list individually" and included the total value. In contrast, the plaintiff specifically allocated her personal property on her financial affidavit as "household furniture and furnishings, jewelry, and piano," and gave each its respective value.

"Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . An exception to the rule . . . is that an award of attorney's fees is justified even where both parties are financially able to pay their own fees if the failure to make an award would undermine its prior financial orders . . . . Whether to allow counsel fees [under §§ 46b-62 and 46b-82], and if so in what amount, calls for the exercise of judicial discretion. . . . An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Citations omitted; internal quotation marks omitted.) *Bornemann* v. *Bornemann,* supra, 245 Conn. 543.

In the present case, the trial court ordered the defendant to pay $7500 toward the plaintiff's attorney's fees. The trial court awarded attorney's fees because it concluded that "much of the plaintiff's accrued or already paid legal fees have been caused by the defendant's failure . . . promptly and candidly [to] comply with numerous motions and discovery." Moreover, the trial court awarded the plaintiff mostly nonliquid assets, such as the marital home and an interest in the defendant's pension that was not yet exercisable as of the date of dissolution. Conversely, the trial court noted that the defendant had converted most of his assets to cash. Accordingly, we find nothing in this record that persuades us that the trial court abused its discretion in ordering the defendant to pay a portion of the plaintiff's attorney's fees.

## VI

## FINDING OF CONTEMPT

The defendant's final claim is that the trial court improperly found him in contempt for failing to comply with a court order requiring him to produce certain documents. We disagree.

The following additional facts are necessary for our resolution of this issue. The plaintiff, on September 13, 2001, served on the defendant a subpoena duces tecum requiring him to produce various financial and business records at his scheduled deposition. Thereafter, the defendant filed a motion to quash the subpoena because he claimed that the subpoena was overly broad and burdensome. On September 17, 2001, the trial court, *Dubay, J.*, ordered the defendant to comply with most of the requests in the subpoena. Thereafter, the defendant, at his deposition, failed to produce any of the records requested by the plaintiff in her subpoena. Consequently, on September 24, 2001, the plaintiff filed a motion for contempt, claiming that the defendant wilfully had failed to comply with the court's order by failing to bring any of the requested records to the deposition. The trial court, after hearing testimony from the defendant regarding what efforts he took to comply with the order, granted the motion and found the defendant in wilful contempt, and ordered him to pay $500 in attorney's fees to the plaintiff.

We begin the analysis of the defendant's claim by setting forth the applicable standard of review. "[O]ur review [of a finding of civil contempt] is technically limited to questions of jurisdiction such as whether the court had authority to impose the punishment inflicted and whether the act or acts for which the penalty was imposed could constitute a contempt. . . . This limitation originates because by its very nature the court's contempt power . . . must be balanced against the

contemnor's fundamental rights and, for this reason, there exists the present mechanism for the eventual review of errors which allegedly infringe on these rights. . . . We have found a civil contempt to be improper or erroneous because: the injunction on which it was based was vague and indefinite . . . the findings on which it was based were ambiguous and irreconcilable . . . the contemnor's constitutional rights were not properly safeguarded . . . the penalties imposed were criminal rather than civil in nature . . . and the contemnor, through no fault of his own, was unable to obey the court's order." (Internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 527–28, 710 A.2d 757 (1998). Also, "[i]t is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." (Internal quotation marks omitted.) Id., 529.

We conclude that the trial court reasonably found the defendant in contempt of its orders. Specifically, the defendant, who had been ordered to comply with the plaintiff's subpoena seeking financial records, failed to bring a single document to the scheduled deposition. The defendant testified that his preparations for the deposition consisted of "mentally trying to visualize where [the defendant] might have all [his] material stored . . . ." The defendant's failure to comply with a court order suffices as a ground for a finding of contempt. Moreover, General Statutes § 46b-87[16] permits the trial court to order attorney's fees after a finding of contempt. Accordingly, the trial court acted within its authority when granting the plaintiff's motion for contempt and awarding her attorney's fees.

---

[16] General Statutes § 46b-87 provides in relevant part: "When any person is found in contempt of an order of the Superior Court entered under section 46b-60 to 46b-62, inclusive, 46b-81 to 46b-83, inclusive, or 46b-86, the court may award to the petitioner a reasonable attorney's fee . . . such sums to be paid by the person found in contempt . . . ."

The judgment is affirmed.

In this opinion the other justices concurred.