******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

REEM AL-FIKEY *v.* MOHAMED OBAIAH
(AC 41061)

Moll, Devlin and Beach, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court
dissolving his marriage to the plaintiff and issuing certain financial
orders. *Held:*

1. The trial court's finding that the defendant was at fault for the irretrievable
breakdown of the marriage was not clearly erroneous; sufficient evi-
dence supported the court's finding, including evidence that the defen-
dant abruptly left the marital home with little explanation.

2. The trial court properly found that the defendant was intentionally under-
employed when calculating his earning capacity: even though the defen-
dant claimed that the court erred in basing his earning capacity on his
prior work as an information technology consultant because he claimed
his qualifications were outmoded to work in that field, this contention
relied on the defendant's testimony regarding the amount and sources
of his income, which the court expressly found was not credible, there
was little support in the record for the defendant's claim that he could
not pursue additional employment in his field, and there was evidence
that the defendant had, as recently as 2013, worked in the field of
information technology, but had done little since then to improve his
qualifications or pursue additional employment in the field; thus, it was
not clearly erroneous for the court to to calculate its support orders on
the basis of the defendant's earning capacity rather than his actual
income.

3. The defendant could not prevail on his claim that the trial court improperly
determined which properties were part of the marital estate; although
the defendant claimed that numerous properties should not have been
included in the marital estate because the plaintiff made no contribution
to the acquisition of these properties and the defendant did not have
title to these properties when the marriage was dissolved, the court
recognized that the marital home was foreclosed because of the defen-
dant's misconduct and, in lieu of the marital home, the court awarded
the plaintiff a single property and, at the same time, awarded the defen-
dant his current residence along with seven additional properties; the
court acted within its broad discretion in dividing the properties as it
did, having been confronted with a complicated record regarding the
defendant's property ownership, and its decision to award the parties
separate residences and to allow the defendant to retain whatever inter-
est he possessed in seven other properties was reasonable.

Argued October 22, 2019—officially released February 25, 2020

*Procedural History*

Action for the dissolution of a marriage, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Stamford-Norwalk and tried to the court, *Tin-
dill, J.*; judgment dissolving the marriage and granting
certain other relief, from which the defendant appealed
to this court. *Affirmed.*

*Igor G. Kuperman*, for the appellant (defendant).

*Alex J. Martinez*, for the appellee (plaintiff).

*Opinion*

DEVLIN, J. The defendant, Mohamed Obaiah, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Reem Al-Fikey. The defendant asserts that the trial court improperly (1) found him at fault for the irretrievable breakdown of the marriage, (2) found that he was intentionally underemployed when calculating his earning capacity, and (3) determined which properties were part of the marital estate. We affirm the judgment of the trial court.

The following facts, as found by the trial court or undisputed in the record, and procedural history are relevant. On September 19, 1997, the parties were married in Cairo, Egypt. They have two daughters resulting from their union, both of whom are now adults. Shortly before the marriage, the defendant acquired a parcel of land in Egypt (Egyptian property) with the intent that it would be the parties' home if they decided to live in Egypt. During the marriage, the defendant worked for many years as an information technology consultant. In connection with his work, the parties moved from Egypt and, eventually, settled in Cos Cob in 2003, and acquired the marital home at 453 East Putnam Avenue (Cos Cob home).

In September, 2007, the defendant entered into a financial arrangement with Mohsen Shawarby regarding property located at 3570 Ellis Street, Mohegan Lake, New York (Mohegan Lake property). Shawarby did not have the credit score necessary to obtain a mortgage to complete new construction on a neighboring property, so, instead, he agreed to transfer his interest in the Mohegan Lake property to the defendant for a nominal fee. The plan was that the defendant would then obtain a mortgage for the Mohegan Lake property and Shawarby would make the mortgage payments. On September 2, 2007, the defendant and Shawarby executed a contract wherein Shawarby agreed to transfer title to the Mohegan Lake property to the defendant. Although the contract provided that the defendant would, at an unspecified date, return title to the Mohegan Lake property to Shawarby, evidence introduced at trial established that, at least as of the date of dissolution, the defendant still possessed title to the Mohegan Lake property.

In the summer of 2009, as the plaintiff was preparing to travel with her daughters to visit family in Egypt, the defendant informed her that he would not be at their marital home when she returned. When the plaintiff returned with her daughters from Egypt in August, 2009, she discovered that the defendant had, in fact, departed from their home in Cos Cob. Since the summer of 2009, the parties have remained separated, although the plaintiff has made repeated attempts to repair the relationship.

Beginning in 2011, the defendant acquired numerous properties for various purposes. For a number of these properties, the defendant received money from his mother in Egypt to purchase them in his name, in her name, or on her behalf. At times, the defendant would represent his mother's interest in various limited liability companies and exercised power of attorney on her behalf for some transactions. In Bridgeport, he either directly acquired or was involved in the acquisition of eight different properties: 96-98 Washington Terrace (Washington Terrace property), 674-676 Iranistan Avenue (674 Iranistan property), 224-228 Sheridan Street (Sheridan property), 69-71 Harral Avenue (Harral property), 97–99 Poplar Street, 1373 Iranistan Avenue (1373 Iranistan property), 525-527 Connecticut Avenue (Connecticut Avenue property), and 1526-1528 Fairfield Avenue (Fairfield Avenue property). As of the time of trial, the Washington Terrace property was the defendant's residence.

In 2012, the defendant was laid off from his job as an information technology consultant. Prior to the layoff, he was earning a salary of $117,000 per year. In 2013, he was temporarily employed with another company as an information technology consultant, earning $55 an hour. Since that time, the defendant has primarily worked in customer service and reported earnings that are far less than he was earning as an information technology consultant.

On March 10, 2013, the plaintiff commenced this dissolution action, and trial began on May 1, 2015. On October 31, 2017, following twenty-six days of trial spanning nearly two and one-half years, the court, *Tindill, J.*, rendered judgment dissolving the marriage. In its memorandum of decision, the court made orders regarding, inter alia, property distribution and alimony. The court found the defendant at fault for the irretrievable breakdown of the marriage. The court found that the defendant was intentionally underemployed and awarded alimony to the plaintiff on the basis of his earning capacity. With respect to the property division, the court found that the following properties were part of the marital estate: the Egyptian property, the Mohegan Lake property, the Cos Cob home, the Washington Terrace property, the 674 Iranistan property, the Sheridan property, the Harral property, the 1373 Iranistan property, the Connecticut Avenue property, the Fairfield Avenue property, and property located at 97 Iranistan Avenue in Bridgeport. The court also found that, as a result of the defendant's "intentional delay and neglect," the Cos Cob home was foreclosed prior to the dissolution judgment. On the basis of these findings of fact, the court awarded the Mohegan Lake property to the plaintiff,[1] the eight Bridgeport properties to the defendant, and ordered that each party retain his or her own ownership interest in any real estate located

in Egypt. This appeal followed.

We begin by setting forth the relevant standard of review. "The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Therefore, to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Emerick* v. *Emerick*, 170 Conn. App. 368, 378, 154 A.3d 1069, cert. denied, 327 Conn. 922, 171 A.3d 60 (2017).

Moreover, insofar as the defendant challenges the trial court's determinations of credibility, we note that "[i]t is well established . . . that the evaluation of a witness' testimony and credibility are wholly within the province of the trier of fact. . . . Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom. . . . Thus, while we may review the court's underlying factual determinations under the clearly erroneous standard, our review requires us to defer to the court's evaluation of the plaintiff's credibility relative to that of the defendant." (Citation omitted; internal quotation marks omitted.) Id., 378–79.

## I

The defendant first claims that the trial court erroneously concluded that he was at fault for the breakdown of the marriage. We disagree. A trial court's finding of fault in a dissolution action is reviewed under a clearly erroneous standard. See *Emerick* v. *Emerick*, supra, 170 Conn. App. 383 n.11; see also *Jewett* v. *Jewett*, 265 Conn. 669, 692–93, 830 A.2d 193 (2003). Our review of the extensive record before the trial court reveals that

there was sufficient evidence to support its finding that the defendant was at fault for the irretrievable breakdown of the marriage.[2] For example, in the summer of 2009, the defendant abruptly left the marital home with little explanation and moved to Canada to live with his mother. He ultimately returned to the United States, but lived separately from the plaintiff and their children. The court's finding of fault was not clearly erroneous.

## II

The defendant next claims that, when fashioning its support orders, the court erroneously concluded that he was intentionally underemployed. We disagree.

General Statutes § 46b-82 (a) provides in relevant part: "In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties . . . ." Moreover, "[i]t is well established that the trial court may under appropriate circumstances in a marital dissolution proceeding base financial awards [pursuant to General Statutes §§ 46b-82 (a) and 46b-86] on the earning capacity of the parties rather than on actual earned income. . . . Earning capacity, in this context, is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health. . . . When determining earning capacity, it . . . is especially appropriate for the court to consider whether [a person] has wilfully restricted his [or her] earning capacity to avoid support obligations." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Tanzman* v. *Meurer*, 309 Conn. 105, 113–14, 70 A.3d 13 (2013). A trial court's finding of earning capacity warrants reversal only if it is clearly erroneous. See *Milazzo-Panico* v. *Panico*, 103 Conn. App. 464, 468–69, 929 A.2d 351 (2007).

On appeal, the defendant claims that his qualifications are outmoded to work currently as an information technology consultant and, thus, it was erroneous for the court to base his earning capacity on his prior work in that field. This contention, however, relies on the testimony of the defendant regarding the amount and sources of his income, which the court expressly found was "not credible." As noted, we are bound by the trial court's determinations of credibility. In the absence of the defendant's testimony on this issue, there is little support in the record for his argument that he cannot pursue additional employment in his area of expertise. Conversely, there was evidence before the court that,

as recently as 2013, the defendant had been employed in the field of information technology, but has done little since then to improve his qualifications or pursue additional employment in the field. Therefore, it was not clearly erroneous for the court to conclude that the defendant was intentionally underemployed and to calculate its support orders on the basis of his earning capacity rather than his actual income.

### III

Lastly, the defendant claims that the court improperly determined which properties were part of the marital estate and subject to division. Specifically, he argues that numerous properties[3] should not have been included because (1) the plaintiff made no contribution to the acquisition of these properties, and (2) the defendant did not have title to these properties at the time the marriage was dissolved. In the court's decision, it recognized that the Cos Cob home was foreclosed on account of the defendant's misconduct. In lieu of the marital home, the court instead awarded the plaintiff a single property: the Mohegan Lake property. At the same time, the court awarded the defendant his current residence at the Washington Terrace property along with seven additional properties. We conclude that the trial court acted within its broad discretion in dividing the properties as it did. The trial court was confronted with a complicated record regarding the defendant's property ownership. Its decision to award separate residences to each party and to allow the defendant to retain whatever interest he possessed in the seven other Bridgeport properties was reasonable.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In the event that the defendant no longer owned the Mohegan Lake property, the court ordered him to pay to the plaintiff the fair market value of the property as of October 31, 2017.

[2] We note that the trial court did not expressly connect its finding of fault to its financial orders, nor did the defendant claim any such connection.

[3] The court's judgment reflected eleven properties in the marital estate, noting that the "properties are subject to division by the [c]ourt by virtue of the [d]efendant's interest therein . . . ." On appeal, the defendant has made no argument to challenge the court's orders regarding the Cos Cob home or the Washington Terrace property. Therefore, we need only address the validity of the court's orders concerning the remaining nine properties.