BRETT STONE PAINTING AND MAINTENANCE, LLC
*v.* NEW ENGLAND BANK
(AC 34261)

Gruendel, Robinson and Dupont, Js.

Argued March 18—officially released July 2, 2013

*Tani E. Sapirstein,* for the appellant-cross appellee (defendant).

*Kerry M. Wisser,* with whom was *Nathan A. Schatz,* for the appellee-cross appellant (plaintiff).

*Opinion*

GRUENDEL, J. The defendant, New England Bank, appeals from the judgment of the trial court in favor of the plaintiff, Brett Stone Painting and Maintenance, LLC. Distilled to its essence, this appeal concerns whether the court properly determined that the defendant stepped into the shoes of a homeowner and thereafter breached a construction contract with the plaintiff. We affirm the judgment of the trial court.[1]

[1] Following the commencement of this appeal, the plaintiff filed a cross appeal. In what it termed an "addendum to appeal form," the plaintiff stated in relevant part: "This is a 'conditional' cross appeal, filed by the plaintiff from the judgment of the trial court with respect to count two of the complaint, which sought recovery for unjust enrichment. Because the trial court entered judgment in favor of the plaintiff on count one alleging a breach of the terms of an express contract, the trial court expressly did not enter any judgment with respect to count two because count two was pleaded in the alternative to count one . . . . [S]hould the defendant's

Frederick Villar sought to complete construction on a partially built home on Lot #45, Johnnycake Mountain Road in Burlington. On August 14, 2007, the defendant's predecessor in interest, The Apple Valley Bank & Trust Co. (Apple Bank),[2] entered into a loan agreement with Villar regarding the "[c]onstruction of a 4392 [square foot] colonial" on the property. As part of the application for that loan, Villar submitted a written proposal from the plaintiff dated August 2, 2007, to perform various improvements totaling $374,810 (construction contract).[3] The loan agreement specifically referenced that construction contract, stating in relevant part that "[b]orrower shall apply for [a]dvances from the [l]oan [f]und according to the following disbursement schedule: Upon completion of the work as detailed in a proposal dated August 2, 2007, from [the plaintiff]" and that the "total cost for the [p]roject shall not exceed $374,810," which sum is the exact figure set forth in the construction contract.

appeal result in a reversal of the judgment as to count one, the contract claim, then this cross appeal is directed at the judgment on count two, the unjust enrichment claim, in order to permit the Appellate Court to remand the case to the trial court for further proceedings and/or a hearing in damages on count two. Because this cross appeal will become unnecessary if the defendant's appeal is unsuccessful, this cross appeal is 'conditional' in the sense that it should be deemed to be withdrawn if the judgment on count one is affirmed . . . ." In light of our disposition of the defendant's appeal, we do not address the claim advanced in that cross appeal.

[2] In its answer, the defendant admitted that it was "the successor in interest, by merger or otherwise," to Apple Bank. At trial, Randall Gage, an employee of the defendant, testified that the defendant merged with Apple Bank on June 8, 2009.

[3] We refer to the August 2, 2007 proposal as the "construction contract" both for convenience and because that is the nomenclature employed by Apple Bank and Villar to describe it in the operative documents giving rise to this litigation. We further note that an unsigned copy of the construction contract was introduced into evidence at trial, at which Brett Stone, the plaintiff's managing member, testified that, although he and Villar both signed the agreement, he had misplaced the executed copy. Stone further testified that he and Villar had drafted "several documents until [Apple Bank] accepted this one."

The loan agreement provided that Villar would default under the agreement in the event that, inter alia, "the [i]mprovements are not completed . . . prior to February 28, 2008, regardless of the reason for the delay." The loan agreement further provided that "[u]pon the occurrence of any [e]vent of [d]efault . . . [l]ender may, at its option, but without any obligation to do so, and in addition to any other right [l]ender without notice to [b]orrower may have, do any one or more of the following without notice to [b]orrower . . . (i) Exercise any other right or remedy which it has under the [n]ote or [r]elated [d]ocuments . . . ."

One such related document is the "Assignment of Construction Contracts" (assignment) entered into by Apple Bank and Villar on August 14, 2007, the same day the loan agreement was executed. That document provides in relevant part: "[Villar] hereby grants, transfers and assigns to [l]ender all of [Villar's] present and future rights, title and interest in and to the following Construction Contract, including without limitation, all subcontracts, rights and amendments relating thereto, and all related substitute or replacement contracts: the contract between [Villar] and [the plaintiff] (the 'Contractor') dated August 2, 2007 ('Construction Contract')." Notably, the assignment states that "[Villar] represents and warrants with respect to the Construction Contract . . . that: (a) there has been no prior assignment of the Construction Contract; and (b) the Construction Contract is a valid, enforceable agreement . . . ." In the event of a default by Villar, the assignment provides that "from and after the time of any such default, [l]ender immediately shall become entitled, but shall not be obligated, to exercise any rights of [Villar] under the Construction Contract and at [l]ender's option, to perform [Villar's] obligations under the Construction Contract, if any."

The second page of the assignment contains an "acknowledgement of assignment." It provides: "[The plaintiff], being a party to the above described Construction Contract, including the primary construction contract, hereby acknowledges the above assignment of the Construction Contract and warrants that there has been no prior assignments of the Construction Contract of which Contractor has notice. [The plaintiff] hereby warrants that the Construction Contract, and all subcontracts are valid, enforceable agreements and that, to the best of [the plaintiff's] knowledge, [Villar] is not in default thereunder. [The plaintiff] agrees that (a) [l]ender may enforce the obligations of the Construction Contract pursuant to the above assignment with the same force and effect as if enforced by [Villar], and (b) [l]ender may, but shall not be required to, perform the obligations of [Villar], and [the plaintiff] will accept such performance in lieu of performance by [Villar] in satisfaction of [Villar's] obligations under the Construction Contract. [The plaintiff] acknowledges that it is familiar with the disbursement provisions of the loan documents between [Villar] and [l]ender and agrees that such disbursement provisions are satisfactory to [the plaintiff]. [The plaintiff] further agrees that any alternation or amendment of the Construction Contract will not be effective unless and until approved in writing by [l]ender." The plaintiff's "authorized signer" signed that acknowledgement of assignment on August 24, 2007. The plaintiff performed work in accordance with the construction contract until the end of May, 2008.

When the improvements were not completed prior to February 28, 2008, Villar defaulted on the loan agreement with Apple Bank. Apple Bank, through its senior vice president and senior loan officer N. Robert Young, thereafter exercised its option under the assignment to assume Villar's rights and obligations under the construction contract. In its oral memorandum of

decision, the court expressly credited the testimony of Brett Stone, the plaintiff's managing member, that Young urged him to continue to perform the work under the construction contract. Specifically, the court found that "the evidence is replete that Mr. Young, as a fully authorized representative of the bank, with knowledge that considerable work outside the available funds was done at the very start of the project, nonetheless led the plaintiff to do work beyond those funds. The assignment gives the bank the right to step in the shoes of the homeowner and this the bank did by Mr. Young's actions, including the urging that Mr. Stone continue the work, with the full knowledge that with the work done outside of the contract, the funds were not going to be there to complete the project."

The plaintiff's work on the property concluded in late May, 2008. When the plaintiff was not paid in full for the work it had performed pursuant to the construction contract, it commenced the present action. The plaintiff's complaint named "New England Bank f/k/a The Apple Valley Bank & Trust Company" as defendant and contained three counts alleging breach of contract, unjust enrichment and fraudulent misrepresentation. A court trial followed. At its conclusion, the court rendered its oral memorandum of decision from the bench on January 18, 2012. The court first addressed the fraudulent misrepresentation claim, stating that "the court finds that the plaintiff has not proven the allegations of the third count, and judgment will enter on the fraud count for the defendant." The court then turned its attention to the claim of unjust enrichment, stating that "[t]here is no question that plaintiff is entitled to prevail on the unjust enrichment count. The closer question is the contract count, which the court will deal with in a moment. If the court finds for plaintiff on the contract count, then, of course, no decision is appropriate on the unjust enrichment count. However, the court must

note that were it to reach the unjust enrichment count, the court would not find that unclean hands has been proven in the case, regardless of the fact that it has not been pleaded as a special defense. The court would find that necessary detrimental reliance and benefit to the defendant. That being said, the court does intend to enter judgment on the contract count."

The court then analyzed the contract claim and found that the defendant, through Young's actions,[4] exercised its option under the assignment "to step in the shoes" of Villar. The court further found that Young urged the plaintiff to continue its work with "full knowledge" that "the funds were not going to be there to complete the project." As a result, the court awarded the plaintiff $96,814 in initial damages. In response to defense counsel's request for a clarification, the court articulated that "Young's conduct is replete throughout the testimony of [Stone], and I accept that his urgings to complete the work were the de facto and de jure operation of the bank of stepping into the shoes of the assignor of that construction contract." Following a hearing on January 26, 2012, the court awarded the plaintiff "interest per the contract" in the amount of $61,852.14, and $50,297.62 in attorney's fees.[5] From that judgment, the defendant now appeals.[6]

---

[4] The court found that Young was "a fully authorized representative of the bank."

[5] The construction contract provides in relevant part: "Invoices unpaid after 10 days will be charged interest at a rate of 1.5 percent per month (18 percent annually). If legal action is required to collect an overdue amount, the Client agrees to pay all costs of collection including court and attorney's fees." In this appeal, the defendant raises no claim with respect to the awards of interest and attorney's fees.

[6] On June 15, 2012, the defendant requested an articulation from the trial court, which was denied. On August 20, 2012, the defendant filed a motion for review with this court asking us to direct the court to comply with its previous articulation request. We granted review, but denied the relief requested.

As a preliminary matter, we note that there is no dispute that the construction contract between the plaintiff and Villar is a valid contract. The defendant does not argue otherwise in this appeal. Indeed, Villar averred, in signing the assignment he entered into with Apple Bank, that "the Construction Contract is a valid, enforceable agreement . . . ." The plaintiff likewise acknowledged that the construction contract was a valid and enforceable agreement in signing the acknowledgement of assignment.

## I

The defendant claims that the court improperly determined that it, as successor in interest to Apple Bank, "stepped into the shoes" of Villar and, hence, was bound by the construction contract. We disagree.

## A

We first consider the defendant's assertion that "[a]s a default by Villar was a condition precedent to the defendant's entitlement to exercise Villar's rights and be bound by Villar's obligations under the assignment and there was no default by Villar, the defendant could not as a matter of law assume Villar's obligations under the assignment." The defendant raised this claim for the first time in its reply brief and, thus, is not entitled to review thereof. See *Plante* v. *Charlotte Hungerford Hospital*, 300 Conn. 33, 59, 12 A.3d 885 (2011); *Mangiafico* v. *State Board of Education*, 138 Conn. App. 677, 680–81 n.4, 53 A.3d 1066 (2012).

Even if we were to review the claim, the defendant could not prevail. See *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 297 Conn. 105, 129 n.30, 998 A.2d 730 (2010). The court did not make an explicit finding of default in its oral memorandum of decision. Although the defendant requested a clarification of another aspect of the court's decision when the court

delivered its ruling and later filed a request for an articulation with the court on other issues, at no time did the defendant ever ask the court to make an explicit finding on the issue of default.

We nevertheless conclude that the court's memorandum of decision, read in its entirety and in light of the three day trial proceeding, establishes that the court implicitly found that Villar had defaulted on the loan agreement. During closing arguments, which were held minutes before the court rendered its oral decision, the court specifically found, and the parties so stipulated, that Villar had to default on the loan agreement before Apple Bank could exercise any of his rights under the construction contract. The court remarked that "if I remember the assignment, there has to be some kind of a default before the bank has the right under the assignment . . . ." The court then examined the assignment and the following colloquy ensued:

"The Court: I'm five lines down [in the lender's rights section of the assignment], without the prior written consent of lender.

"[The Defendant's Counsel]: Right.

"The Court: Okay.

"[The Defendant's Counsel]: And then the next sentence.

"The Court: Unless and until a default shall occur, lender shall not exercise any of assignor's rights, provided after default, lender—that's what I thought, okay.

"[The Defendant's Counsel]: Yeah, there has to be a default.

"The Court: Lender immediately shall become entitled.

"[The Defendant's Counsel]: Right. There has to be a default. I thought so, too.

"The Court: Are you on board with that, Mr. Wisser?

"[The Plaintiff's Counsel]: I am. I am."

Accordingly, both the parties and the court understood that, for Apple Bank to assume Villar's rights and obligations under the assignment, there must first be a default by Villar.

In Connecticut, our appellate courts do not presume error on the part of the trial court. *Carothers* v. *Capozziello*, 215 Conn. 82, 105, 574 A.2d 1268 (1990); *State* v. *Tocco*, 120 Conn. App. 768, 781 n.5, 993 A.2d 989, cert. denied, 297 Conn. 917, 996 A.2d 279 (2010). Rather, "we presume that the trial court, in rendering its judgment . . . undertook the proper analysis of the law and the facts." *S & S Tobacco & Candy Co.* v. *Greater New York Mutual Ins. Co.*, 224 Conn. 313, 322, 617 A.2d 1388 (1992); see also *DiBella* v. *Widlitz*, 207 Conn. 194, 203–204, 541 A.2d 91 (1988) ("we presume that the trial court correctly analyzed the law and the facts in rendering its judgment"). Because this court does not presume error and mindful that the court rendered its oral decision moments after the foregoing colloquy, we presume, consistent with the record before us, that the court implicitly found that Villar had defaulted on the loan agreement. See *Young* v. *Commissioner of Correction*, 104 Conn. App. 188, 190 n.1, 932 A.2d 467 (2007) ("Although the court made no findings of fact on the record . . . it is clear from the transcript of the hearing and from the ruling of the court that the issue under consideration was whether the petitioner satisfied the 'in custody' requirement for maintaining a habeas corpus action. From the transcript of the hearing, we are able to infer the facts on which the court's decision appears to have been predicated."), cert. denied, 285 Conn. 907, 942 A.2d 416 (2008); *O'Shea* v. *Mignone*, 35

Conn. App. 828, 833, 647 A.2d 37 (presuming trial court made finding based on review of record), cert. denied, 231 Conn. 938, 651 A.2d 263 (1994).

The remaining question is whether that finding is clearly erroneous. "Questions of fact are subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *Murtha* v. *Hartford*, 303 Conn. 1, 12–13, 35 A.3d 177 (2011).

The loan agreement, introduced into evidence as exhibit 4, provides in relevant part that Villar would be in default under the agreement in the event that "the [i]mprovements are not completed . . . prior to February 28, 2008, regardless of the reason for the delay." The plaintiff presented evidence, which the defendant does not dispute, that Villar did not complete construction by February 28, 2008. In his deposition testimony, which was admitted into evidence at trial, Young admitted that Villar had defaulted on the loan agreement.[7]

---

[7] On the issue of whether Villar defaulted on the loan agreement by not completing construction by February 28, 2008, Young testified as follows:

"Q. The borrower did not perform promptly by completing the property strictly in the manner provided for in this [loan] agreement. Correct?

"A. Yes.

"Q. Okay. So there was a default under the agreement by failing to do so. Correct?

"A. Yes."

"It is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony." (Internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 26, 807 A.2d 955 (2002); see also *DiVito* v. *DiVito*, 77 Conn. App. 124, 138, 822 A.2d 294 (court free to accept or reject, in whole or in part, testimony offered by either party), cert. denied, 264 Conn. 921, 828 A.2d 617 (2003). Accordingly, the court here was entitled to credit Young's sworn testimony that Villar defaulted on the loan agreement. See *Jay* v. *A & A Ventures, LLC*, 118 Conn. App. 506, 514, 984 A.2d 784 (2009). On that evidence, the court reasonably could find that a default had transpired.[8] Such a finding, therefore, is not clearly erroneous.

## B

We next turn to the question of whether the court properly found that the defendant exercised its option to "to step in the shoes" of Villar with respect to his rights and obligations under the construction contract. The defendant claims that there is no evidence in the record to support that determination.

The assignment provides in relevant part that "[Villar] hereby grants, transfers and assigns to [l]ender all of

---

[8] We note that the defendant's counsel acknowledged that a default had transpired in a colloquy with the court during her cross-examination of Stone. Following an objection by the plaintiff's counsel to a question regarding a communication between Stone and Villar, the court noted that "[t]he objection is to what he told [Villar] and I'm trying to fathom on these pleadings, what [Villar's] knowledge has to do, or . . . what [Stone's] communications with [Villar] have to do with the case." The defendant's counsel replied: "Because if [Stone] knew back in November, *before there was a default*, before the funds had run out, that there was going to be a cost overrun to the extent that he's now claiming in this lawsuit, one would think he would have told the homeowner, and at that point, perhaps tried to talk [Villar] and maybe the bank about refinancing . . . ." (Emphasis added.) It is difficult to reconcile that representation before the trial court with the defendant's claim in this appeal.

[Villar's] present and future rights, title and interest in and to the following Construction Contract, including without limitation, all subcontracts, rights and amendments relating thereto, and all related substitute or replacement contracts: the contract between [Villar] and [the plaintiff] (the 'Contractor') dated August 2, 2007 ('Construction Contract')." In the event of a default by Villar, the assignment provides that "from and after the time of any such default, [l]ender immediately shall become entitled, but shall not be obligated, to exercise any rights of [Villar] under the Construction Contract and at [l]ender's option, to perform [Villar's] obligations under the Construction Contract, if any."

In its oral memorandum of decision, the court found that Apple Bank exercised its option under the assignment "to step in the shoes" of Villar and assume his rights and obligations under the construction contract. The court predicated that finding on Stone's testimony, as was its exclusive prerogative. See *Montville* v. *Antonino*, 77 Conn. App. 862, 871, 825 A.2d 230 (2003) ("[c]ourts of appeal do not pass on the credibility of witnesses").

In his testimony, Stone explained that when billing issues arose in early 2008, Young urged him to continue to perform the work under the construction contract. Young assured Stone that the plaintiff would be paid for all work performed under the construction contract and requested that he provide copies of all invoices to Apple Bank. As Stone testified, "[Young] told me to send [him] the paperwork; send [him] what you're repairing, and [Apple Bank will] pay it, take care of it; we have to get this house done." In a colloquy with counsel, Stone elaborated on the representations made by Young:

"[The Plaintiff's Counsel]: [W]hat, if anything, did [Young] advise you about whether your company and

you should continue to work on the house [after Villar stopped making payments]?

"[Stone]: What me and [Young] discussed was trying to get [Villar] into the house as cheap as possible and get the [certificate of occupancy] and then remortgage. He was going for a second mortgage. That's when I then told [Young] that we would then finish the house.

"[The Plaintiff's Counsel]: And what information, if any, did [Young] provide to you about whether you should have any concerns about being paid?

"[Stone]: No concerns.

"[The Plaintiff's Counsel]: Is that something [Young] told you?

"[Stone]: Yes.

"[The Plaintiff's Counsel]: What words did he use?

"[Stone]: Don't worry; we'll take care of you; there shouldn't be an issue. And that's the reason why I kept working.

"[The Plaintiff's Counsel]: Okay. So did you rely on that statement: keep going; we'll take care of you, to continue to build?

"[Stone]: After working with [Young], and I had a lot of respect for him and I—yes, I [had] faith in him.

"[The Plaintiff's Counsel]: Okay. All right. And in this time frame, after the first of [2008], did [Young] make the statement to you: keep going, you'll get paid, once or more than once?

"[Stone]: More than once."

As a result, Stone testified that he "would send [Young] a copy of all the invoices, all the labor, all my materials, and the bill." Apple Bank subsequently furnished partial payments by check to the plaintiff.

Indeed, copies of three bank checks from Apple Bank were introduced by the defendant and admitted into evidence at trial. The first is check number 6514 dated March 3, 2008, which is payable to the plaintiff in the amount of $25,000. That check issued three days after Villar defaulted on the loan agreement. The second is check number 6757 dated April 28, 2008, which is payable to the plaintiff in the amount of $25,000. The third is check number 6758 dated April 28, 2008, which is payable to Kevin Stone in the amount of $3500. Stone testified that he received a majority of the payments for the plaintiff's work from Young, in the form of checks from Apple Bank. He explained that he believed "Young was doing his best to make payments to me, or to keep his word. . . . That I would get paid, and that we were going to work this house out." As the work under the construction contract progressed into its latter stages, Stone testified that it was Young, and not Villar, who monitored the plaintiff's work. Stone also testified that the plaintiff kept working on the property in reliance on Young's assurances that it would be paid.

On that evidentiary basis, the court found that "Young's conduct is replete throughout the testimony of [Stone], and I accept that his urgings to complete the work were the de facto and de jure operation of the bank of stepping into the shoes of the assignor of that construction contract." Given the evidence in the record before us, we cannot say that the court's finding is clearly erroneous.

C

Notwithstanding the foregoing, the defendant maintains that the court's findings that Villar defaulted on the loan agreement and that Apple Bank stepped "into the shoes of the assignor of [the] construction contract" cannot stand because they violate the parol evidence

rule. Specifically, it claims that the court improperly considered the sworn testimony of Stone and Young in evaluating the plaintiff's breach of contract claim. We disagree.

"Ordinarily, [o]n appeal, the trial court's rulings on the admissibility of evidence are accorded great deference. . . . Rulings on such matters will be disturbed only upon a showing of clear abuse of discretion. . . . Because the parol evidence rule is not an exclusionary rule of evidence, however, but a rule of substantive contract law . . . the [defendant's] claim involves a question of law to which we afford plenary review. . . .

"The parol evidence rule is premised upon the idea that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme. . . . The parol evidence rule does not of itself, therefore, forbid the presentation of parol evidence, that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract." (Citation omitted; internal quotation marks omitted.) *Alstom Power, Inc.* v. *Balcke-Durr, Inc.*, 269 Conn. 599, 609, 849 A.2d 804 (2004). Parol evidence "may be admissible to explain ambiguities that exist in the contract." *Clean Corp.* v. *Foston*, 33 Conn. App. 197, 203 n.6, 634 A.2d 1200 (1993).

No such ambiguities exist in the assignment, which plainly provides that Apple Bank had the option, but

not the duty, to step into Villar's shoes with respect to the construction contract. The testimony of Stone and Young was offered not to vary any term of the assignment, but rather to prove that Apple Bank elected to exercise that option approximately six months after it entered into that agreement. See *Connecticut Savings Bank* v. *Central Builders' Supply Co.*, 4 Conn. App. 332, 333–35, 494 A.2d 601 (parol evidence permitted in case where court found contract option exercised), cert. denied, 197 Conn. 805, 499 A.2d 56 (1985). A critical issue in this case was whether Apple Bank, through the conduct of its fully authorized representative, exercised its option under the assignment. The parties necessarily were required to proffer evidence to establish or refute such a factual basis. This the plaintiff did, through the aforementioned testimonial and documentary evidence. The admission of such evidence neither varied nor contradicted the terms of the assignment and, thus, does not run afoul of the parol evidence rule.

### D

The court determined, as a matter of law, that the defendant was obligated to compensate the plaintiff for the work it performed following Apple Bank's exercise of its option under the assignment. The defendant's challenge to that conclusion presents a question of law over which our review is plenary. See *Hartford* v. *McKeever*, 139 Conn. App. 277, 283, 55 A.3d 787 (2012), cert. granted on other grounds, 307 Conn. 956, 59 A.3d 1191 (2013).

The assignment is titled "Assignment of Construction Contracts." It is undisputed that the assignment pertained exclusively to the construction contract. It provides in relevant part that "[a]ssignor hereby grants, transfers and assigns to [l]ender all of [a]ssignor's present and future rights, title and interest in and to the

following Construction Contract, including without limitation, all subcontracts, rights and amendments relating thereto, and all related substitute or replacement contracts: the contract between [a]ssignor and [the plaintiff] dated August 2, 2007."

The Restatement (Second) of Contracts specifically addresses the assignment of contracts. Section 328 provides: "(1) Unless the language or the circumstances indicate the contrary . . . an assignment of 'the contract' or of 'all my rights under the contract' or an assignment in similar general terms is an assignment of the assignor's rights and a delegation of his unperformed duties under the contract. (2) Unless the language or the circumstances indicate the contrary, the acceptance by an assignee of such an assignment operates as a promise to the assignor to perform the assignor's unperformed duties, and the obligor of the assigned rights is an intended beneficiary of the promise." 3 Restatement (Second), Contracts § 328, pp. 44–45 (1981).

The language of the assignment plainly provided Apple Bank the option, but not the duty, to exercise Villar's rights and obligations under the construction contract.[9] As discussed in part II B of this opinion, the trial court found that Apple Bank exercised that option through the conduct of Young, its fully authorized representative. This court has recognized that although "an assignee generally does not assume the original responsibilities of the assignor, [it] may be liable . . . for [its] failure to perform obligations of the assignor which [it] has assumed." (Internal quotation marks omitted.) *Hartford* v. *McKeever*, supra, 139 Conn. App. 285; see also 6A C.J.S. 513, Assignments § 118 (2004) (obligations of assignor "are imposed on the assignee where

---

[9] In their respective appellate briefs, the parties expressed their agreement with that proposition.

he or she assumes them"). Thus, "where it is clearly the intent of the parties, the assignee also succeeds to the obligations of the contract." 6A C.J.S., supra, § 94, p. 485. We conclude that the assignment reflects a clear intent to permit Apple Bank to assume the obligations of Villar. Because the court determined that Apple Bank exercised that option, which finding is supported by the record before us, we cannot conclude that the court, as a matter of law, improperly held the defendant liable to the plaintiff for the work it performed under the construction contract following Apple Bank's exercise of that option.

II

As a final matter, the defendant contends that the assignment of the construction contract is "void as a matter of law" because the construction contract "does not comply with the provisions of the Home Improvement Act" (act), General Statutes § 20-418 et seq. In rejecting that claim, the court emphasized that the defendant had not specially pleaded that defense.[10]

As this court has recognized, a party seeking to utilize the act as a shield to liability must plead it as a special defense. *Sidney* v. *DeVries*, 18 Conn. App. 581, 587, 559 A.2d 1145 (1989), aff'd, 215 Conn. 350, 575 A.2d 228 (1990). At the same time, "a failure to allege a special defense is waived if evidence relating to that special defense is admitted without objection." Id. No such waiver is present here. To the contrary, the plaintiff's counsel objected to the defendant's invocation of the act and stated that "it has never been pled. The [defendant] never pled it. Had the [defendant] pled it, I would have had a right to plead, by way of avoidance, the bad faith exception to the home improvement contract

---

[10] The defendant does not address this specific ruling of the court in either its principal or reply brief. Rather, it provides an analysis as to how the act allegedly applies to the facts of this case.

. . . . [A]nd I would have certainly pled and taken discovery on the issues of the bad faith exception." In light of the foregoing, the court properly rejected the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.