******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

EVELEIGH, J., dissenting. I respectfully dissent. I disagree with the conclusion of the majority that (1) the trial court did not apply an objective standard to the first element of stalking in its determination of "reasonable fear" and (2) there is insufficient evidence to support a finding that it was reasonably likely that the defendant, J. D., would continue to stalk or to commit acts designed to intimidate or retaliate against the plaintiff, S. B-R., as required for an order of civil protection pursuant to General Statutes § 46b-16a. To the contrary, I would conclude that (1) the trial court correctly followed the statute, and (2) there is sufficient evidence in the record to support the trial court's decision granting the plaintiff's application for an order of civil protection pursuant to § 46b-16a. Accordingly, I would affirm the judgment of the trial court.[1]

I begin by setting forth the factual background of this action, as gleaned from the record. At all relevant times, the plaintiff and the defendant were students at a community college, where they were both enrolled in the college's nursing program. On July 8, 2019, the plaintiff filed an application for an order of civil protection. A hearing was held on the plaintiff's application on July 22, 2019, at which both the plaintiff and the defendant testified.

The plaintiff testified that she knew the defendant from school and that, on or about February 28, 2019, the defendant had sent her an "absurd amount of e-mails stating that, first, my marriage would have intervene[d] with things between us . . . ." When asked whether she was married, the plaintiff explained that she was not and that, in an effort to get the defendant to stop communicating with her, she had lied to the defendant and told him that she was getting married. When asked whether the defendant had made any statements to her that made her fear for her personal safety, the plaintiff responded yes. Specifically, she testified about an e-mail that the defendant had sent her on or about March 1, 2019, which stated: "Honestly, I want to jump on your back a little a rage and that would be dumb." The plaintiff further testified that, on March 3, 2019, the defendant sent her text messages about being suicidal, and that, on February 28, 2019, while in the presence of another person, he had made comments about her breasts that made her fearful of his conduct. With respect to the comments about her breasts, the plaintiff stated that the defendant "was being cocky and . . . was trying to intimidate [her]." Although the plaintiff acknowledged that the communications from the defendant ceased after March 3, 2019, she testified in July, 2019, that his communications with her caused her to fear for her personal safety, that she still feared for her

personal safety, that she planned to attend classes at the community college in the fall, and that she feared that her safety would be at risk if she had any contact with the defendant.

The defendant testified that, in the upcoming fall semester, he did have classes with the plaintiff at the community college. He also acknowledged that he suffers from "a major depressive disorder," which includes suicidal thoughts. Although he claimed that the symptoms underlying the disorder are "all controlled," he also acknowledged that all of the symptoms have "not gone yet."

The court granted the plaintiff's application for an order of civil protection in an oral decision, stating that the "[s]tatute is very clear that indicates that such person causes reasonable fear—the conduct of the defendant causes reasonable fear for the physical safety.[2] So she's made it very clear [that] she's very apprehensive, her conduct on the stand indicated she's reliving some of these things. Things which, depending on your level of threshold and thickness of skin, become more or less significant. But, it's very clear that this is very upsetting to her, and it's affected her ability to carry on life's activities." (Footnote added.) The court ordered the defendant not to have any contact with the plaintiff and to stay 100 yards away from the plaintiff, and its order was effective for one year, until July 22, 2020.[3]

The decision of the majority to reverse the judgment of the trial court hinges on the majority's conclusion that (1) the trial court did not apply an objective standard to the first element of stalking in its determination of "reasonable fear," and (2) "the plaintiff presented no evidence that the defendant would continue to stalk her."[4] I disagree and would conclude, after "allow[ing] every reasonable presumption in favor of the correctness of [the trial court's] action"; (internal quotation marks omitted) *Kayla M*. v. *Greene*, 163 Conn. App. 493, 504, 136 A.3d 1 (2016); that the trial court's decision was reasonably supported by the evidence in the record or the inferences drawn therefrom.

I agree with the majority that a subjective-objective test applies to the statute. I respectfully disagree, however, with the majority's conclusion that the trial court did not consider the objective part of the test. The trial court was reading from the statute when it issued its decision. Its emphasis on the subjective part of the test does not necessarily mean that the objective part was excluded. In Connecticut, our appellate courts do not presume error on the part of the trial court. See *Carothers* v. *Capozziello*, 215 Conn. 82, 105, 574 A.2d 1268 (1990). Rather, "we presume that the trial court, in rendering its judgment . . . undertook the proper analysis of the law and the facts." *S & S Tobacco & Candy Co.* v. *Greater New York Mutual Ins. Co.*, 224 Conn.

313, 322, 617 A.2d 1388 (1992). In my view, the reference to Muhammed Ali and Whistler's Mother, and to a person with thin skin, may be interpreted as an example of the judge considering how much each case had to be determined on the basis of the facts and circumstances surrounding it, and whether a reasonable person would be fearful under the circumstances. Indeed, in cases in which there has been no finding by the trial court, appellate courts have searched the record to see if the trial court's decision had an adequate basis in the record. Thus, in *Brett Stone Painting & Maintenance, LLC* v. *New England Bank*, 143 Conn. App. 671, 681, 72 A.3d 1121 (2013), in which a finding of default was a critical element in the case and the trial court had not made that explicit finding, the Appellate Court reviewed the record in its conclusion that an implicit finding of default was warranted. Likewise, in *Young* v. *Commissioner of Correction*, 104 Conn. App. 188, 190 n.1, 932 A.2d 467 (2007), cert. denied, 285 Conn. 907, 942 A.2d 416 (2008), in which the question of whether the habeas petitioner was in custody had not been decided in order for the petitioner to maintain the habeas action, the Appellate Court was able to infer from the transcript the facts on which the trial court's decision appeared to have been predicated. In the present case, the transcript is replete with the defendant's admissions to his deplorable conduct. These admissions would certainly justify the inference that the objective standard had been met.

In *Kayla M.* v. *Greene*, supra, 163 Conn. App. 506, this court explained that "an applicant for a civil protection order on the basis of stalking pursuant to § 46b-16a must prove only that there are 'reasonable grounds to believe' that every element is met and that such conduct will continue." In *Kayla M.*, this court found that "there was sufficient evidence in the record from which the court reasonably could have concluded that there were reasonable grounds to believe that the plaintiff subjectively feared for her physical safety." Id., 511. Specifically, this court found that the trial court had credited the plaintiff's statements in her affidavit that she felt threatened by the defendant Edward Greene after he had grabbed her arm at her workplace and sent her a threatening e-mail, and that the trial court reasonably could have inferred, on the basis of those facts, that the plaintiff feared for her physical safety. Id. Moreover, although Greene testified at the hearing on the plaintiff's application for a civil protection order that "he had no intention of ever communicating with the plaintiff again"; id.; the trial court nevertheless found that he was " 'unnaturally obsessed' " with the plaintiff, and it reasonably inferred, on the basis of that obsession, that he "would continue his previous course of conduct." Id., 511, 512.

In the present case, the court reasonably could have found, on the basis of the testimony presented, that

there were reasonable grounds to believe that the plaintiff feared for her physical safety and that the defendant would continue in his course of conduct. We do not expect our trial judges to be soothsayers. All that is required is that there is a reasonable probability that the defendant will repeat the reported conduct such that there is a risk of imminent harm to the plaintiff. In this case, I cannot say that the decision of the trial court was an abuse of discretion or that its finding regarding the plaintiff's clear apprehension of the defendant was clearly erroneous.

The record here clearly shows that the defendant's conduct toward the plaintiff was truly bizarre and frightening. Clearly, the conduct was aberrant, obsessive, and delusional. He also threatened future assaultive conduct against the plaintiff when he said that he wanted to "jump on [her] back," in rage, even though he acknowledged that "that would be dumb." He further indicated delusional behavior when, in response to the plaintiff's statement to him that she was getting married, he stated that her marriage would interfere with their relationship. There was no relationship between the plaintiff and the defendant. On the basis of the plaintiff's testimony, however, the trial court reasonably could have inferred that the defendant wanted more than a mere friendship and that the plaintiff must have realized that, as she otherwise would not have invented the story about being married. See *In re Adalberto S.*, 27 Conn. App. 49, 54, 604 A.2d 822 ("court may draw reasonable, logical inferences from the facts proven"), cert. denied, 222 Conn. 903, 606 A.2d 1328 (1992).

The defendant also testified that he has a major depressive disorder that causes him to have suicidal thoughts and that the disorder, which caused his actions, has not fully gone away. Much like in *Kayla M.* v. *Greene*, supra, 163 Conn. App. 512, in which this court upheld the issuance of a civil protection order based, in part, on the defendant's obsession with the plaintiff, the defendant in the present case was fixated on the plaintiff, as evidenced by the numerous unwanted e-mail and text messages that he sent to her. In testifying about his major depressive disorder,[5] the defendant stated that he thinks about things over and over, and he also acknowledged that the symptoms and depression associated with his disorder have not gone away yet. The trial court reasonably could have inferred from that testimony that it was reasonably probable that he would continue his conduct toward the plaintiff when school resumed. See *State* v. *Richards*, 196 Conn. App. 387, 397, 229 A.3d 1157 ("in determining whether the evidence supports a particular inference . . . an inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference" (internal quotation marks omitted)), cert. granted, 335 Conn. 931, 236 A.3d 218 (2020); *Hannon* v. *Redler*, 117 Conn. App. 403, 406, 979

A.2d 558 (2009) ("[i]t is within the province of the trial court to find facts and draw proper inferences from the evidence presented" (internal quotation marks omitted)); *Lupoli* v. *Lupoli*, 38 Conn. App. 639, 643, 662 A.2d 809 ("the role of the trial court as fact finder [is] to judge the credibility of the witnesses, to weigh the evidence and to draw logical inferences and conclusions from the facts proven"), cert. denied, 235 Conn. 907, 665 A.2d 902 (1995).

I also think it is important to note that the trial court in the present case had the benefit of hearing from both parties during the hearing and judging their credibility. The court could have accepted or rejected all or a part of the defendant's testimony. "Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." (Internal quotation marks omitted.) *R.T. Vanderbilt Co.* v. *Hartford Accident & Indemnity Co.*, 171 Conn. App. 61, 93–94, 156 A.3d 539 (2017), aff'd, 333 Conn. 343, 216 A.3d 629 (2019). It would strain credulity for the court to have accepted the defendant's testimony that he had ideas of hurting himself only and never anyone else, when he clearly had issued a threat to jump on the plaintiff's back in rage. Further, the court obviously did not choose to accept the defendant's testimony that his condition was under control when the hearing occurred only a few months after his bizarre acts and he was going to attend the same school with the plaintiff in September. Moreover, the defendant freely admitted that he had considered suicide. Such an act of violence would certainly justify a trial judge to find that a protective order should issue to protect someone who had spurned him and against whom he had made a threat to jump on her back in rage.

The threat of future conduct has to be a significant element in any trial court's decision to issue a protective order, and there certainly was sufficient evidence of a probability of future assaultive conduct here to cause reasonable fear in the plaintiff and to satisfy the objective standard requirement. "[A]n applicant for a civil protection order on the basis of stalking pursuant to § 46b-16a must prove only that there are reasonable grounds to believe that every element is met and that such conduct will continue. . . . In determining whether there are reasonable grounds to believe that stalking occurred, it is instructive that, in the criminal context, [t]he phrase reasonable grounds to believe is synonymous with probable cause. . . . While probable cause requires more than mere suspicion . . . the line between mere suspicion and probable cause necessarily

must be drawn by an act of judgment formed in light of the particular situation and with account taken of all the circumstances." (Citations omitted; internal quotation marks omitted.) *Kayla M.* v. *Greene*, supra, 163 Conn. App. 506. The defendant's credibility, or lack thereof, is a key element in this determination.

The majority concludes that it must reverse because the court did not consider the objective standard and there is no evidence of future conduct. I respectfully disagree because of the defendant's threat of jumping on the plaintiff's back in rage, his unwanted e-mails, the comment about the plaintiff's breasts, and his overall lack of credibility. I further disagree because it would be the rare case in which a defendant testified that he would keep doing the acts which brought him before the court or told someone else to that effect. The defendant in this case engaged in obsessive behavior. At the hearing, he admitted that part of his major depressive disorder has an obsessive component, namely, that he would keep thinking about the same thing over and over. He further testified that his condition was not fully resolved, as he must take medication every night and get treatment from counselors and therapists. Because he had threatened the plaintiff, his testimony that he never thought about hurting anyone else is not credible. In my view, reviewing both the evidence and the reasonable inferences derived therefrom, there clearly was no abuse of discretion in this matter.

For the foregoing reasons, I respectfully dissent.

[1] Our Supreme Court has not yet ruled on the issue of whether a § 46b-16a protective order may be granted when (1) there is prior evidence of criminal stalking, (2) there is a threat of a future criminal act, and (3) the defendant's testimony is not credible.

[2] The court clearly relied on General Statutes § 53a-181e (a), which provides that a person is guilty of stalking in the third degree when such person "recklessly causes another person to reasonably . . . fear for his or her physical safety . . . ."

[3] Although the order of civil protection has expired, the present appeal is not moot. See *C. A.* v. *G. L.*, 201 Conn. App. 734, 736 n.4, 243 A.3d 807 (2020) (applying to order of civil protection under § 46b-16a principle that "expiration of a six month domestic violence restraining order issued pursuant to General Statutes § 46b-15 does not render an appeal from that order moot due to adverse collateral consequences" (internal quotation marks omitted)).

[4] The majority mentions in its decision the fact that the trial court made no explicit finding on the record that "the defendant would continue to commit acts of stalking against the plaintiff" but never states that such an express finding is required. Pursuant to § 46b-16a (b), a trial court may issue an order of civil protection if it finds "that there are reasonable grounds to believe that the respondent has committed acts constituting grounds for issuance of an order . . . and will continue to commit such acts or acts designed to intimidate or retaliate against the applicant . . . ." This court has explained previously that "an applicant for a civil protection order on the basis of stalking pursuant to § 46b-16a must prove only that there are 'reasonable grounds to believe' that every element is met and that such conduct will continue." *Kayla M.* v. *Greene*, 163 Conn. App. 493, 506, 136 A.3d 1 (2016). Neither the statute nor case law directs that the court's findings must be written or express. Moreover, appellate courts "presume that the trial court, in rendering its judgment . . . undertook the proper analysis of the law and the facts." (Internal quotation marks omitted.) *Brett Stone Painting & Maintenance, LLC* v. *New England Bank*, 143 Conn. App. 671, 681, 72 A.3d 1121 (2013). In the present case, given the trial court's

reference, in its oral decision, to the "very clear" requirements of the "statute," it reasonably can be inferred that the court relied on the language in the statute in rendering its decision.

[5] A significant portion of the defendant's testimony on direct examination concerned his major depressive disorder, from which the defendant readily acknowledged that he suffers. He also testified and acknowledged that one of the behaviors of his disorder is obsessive type behavior. Under these circumstances, the court was free to accept or reject all or part of the defendant's testimony about his obsessive type behavior. See *Kayla M.* v. *Greene*, supra, 163 Conn. App. 511–12 (court reasonably could have inferred from evidence produced at hearing that defendant was " 'unnaturally obsessed' " with plaintiff, and, on basis of that obsession, court could have inferred that defendant would continue his previous course of conduct).