******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EDITH HOLMES, ADMINISTRATRIX (ESTATE OF
ARNOLD F. HOLMES) *v.* HARTFORD HOSPITAL
(AC 30979)

Sheldon, Keller and West, Js.

*Argued September 26, 2013—officially released January 28, 2014*

(Appeal from Superior Court, judicial district of
Hartford, Aurigemma, J.)

*Neil Johnson*, for the appellant (substitute plaintiff).

*Michael G. Rigg*, with whom, on the brief, were
*Robert D. Silva* and *Claire V. Morgan*, for the appel-
lee (defendant).

*Opinion*

WEST, J. In this medical malpractice action, the plaintiff, Edith Holmes,[1] in her capacity as administratrix of the estate of Arnold F. Holmes (decedent), appeals from the judgment of the trial court rendered in favor of the defendant, Hartford Hospital, following a jury trial. Specifically, the plaintiff claims that the trial court improperly (1) denied her motion to set aside the verdict; (2) denied her motion for a new trial; and (3) ordered her to pay the defendant's expert witness fees. We affirm the court's judgment as to the plaintiff's first two claims, and affirm in part and reverse in part the judgment as to the plaintiff's third claim.

The following facts and procedural history are relevant to our review. On February 8, 2007, the plaintiff served a complaint against the defendant claiming medical malpractice. Thereafter, on March 3, 2009, the plaintiff filed an amended complaint alleging that the defendant breached the standard of care owed to the decedent, by failing to provide him proper treatment following his cyst gastronomy. Specifically, she alleged that, after the decedent's surgical procedure, the defendant negligently transferred the decedent from the procedure suite to the recovery room and another unit of the hospital without monitoring him or providing him oxygen. The plaintiff also alleged that, as a result of the defendant's negligence, the decedent suffered cardiac arrest that went undetected for twenty minutes. By the time the defendant resuscitated and intubated the decedent, he had suffered neurological deterioration and respiratory failure, causing him to die approximately two weeks later.

In its answer, filed on March 5, 2009, the defendant denied the allegations that it violated the standard of care. In anticipation of trial, the parties conducted discovery and, in accordance with Practice Book § 13-4, filed expert witness disclosures. In mid-December, 2008, the defendant deposed the plaintiff's expert witnesses, David Crippen and Donna Querim, regarding whether the defendant comported with the nursing standard of care. In late January, 2009, the plaintiff deposed the defendant's expert witnesses, including Steven Angelo, Peter Schulman, David Pleet, and Anne Holland. A jury trial began on February 23, 2009, and, on March 6, 2009, the jury entered its verdict in favor of the defendant. This appeal followed. Additional facts will be set forth as they pertain to each claim.

I

The plaintiff first claims that the court improperly denied the plaintiff's motion to set aside the verdict, which motion was predicated on the court's improper evidentiary rulings limiting the testimony of the plaintiff's experts as to the defendant's analgesic policy. We disagree. The following facts are relevant to our review

of this claim.

In late August, 2008, the plaintiff sent the defendant an informal request for copies of any policies related to the transfer of patients. The defendant responded to this request by letter, dated September 12, 2008. The defendant's response did not, however, include the defendant's analgesic policy, which pertains to the care of patients who are moderately sedated during medical procedures. The plaintiff first learned of the analgesic policy while deposing Angelo in late January of 2009. On January 30, 2009, the plaintiff obtained a copy of the policy during Schulman's deposition, and subsequently sent it to her experts, Querim, a registered nurse, and Crippen, a critical care physician, to review before trial.

On the basis of their review, both Querim and Crippen formulated new opinions that conflicted with their deposition testimony. They determined that the defendant breached the standard of care by transferring the decedent to an unmonitored unit while his condition was unstable. The plaintiff did not amend her expert disclosures to reflect these new opinions or to identify the analgesic policy as a potential source of the experts' testimony. See Practice Book § 13-4 (b) (1).

The trial began on February 23, 2009, on which date the defendant filed a motion in limine to preclude the plaintiff's experts from testifying about alleged violations of the defendant's policies. In support of its motion, the defendant argued that a hospital's policies, as a matter of law, do not establish the standard of care because they may impose a level of care that differs from the national standard. See General Statutes § 52-184c (a); *Smith* v. *Andrews*, 289 Conn. 61, 69, 959 A.2d 597 (2008) (Connecticut follows national standard of care). Accordingly, the defendant argued that there was a high risk that the jury would conflate the policies with the standard of care in reaching its verdict. The plaintiff filed an objection to the defendant's motion in limine, and a hearing was held on February 25, 2009. Although the court orally denied the defendant's motion, it stated that the admissibility of the policies would be contingent upon the plaintiff demonstrating that they were equivalent to the applicable standard of care.

Consistent with this ruling, Querim testified at trial that the defendant's analgesic policy comported with the standard of care and, consequently, the court admitted it into evidence. Querim opined that, on the basis of her review of the analgesic policy and the anesthesia flow sheet, the decedent's vital signs were unstable while he was in the recovery room. Therefore, she testified, the defendant violated the standard of care when the recovery room nurses transferred the decedent to an unmonitored unit before his condition stabilized. On cross-examination, the defendant impeached Querim's credibility with her deposition testimony, wherein she

had stated that the decedent's vital signs were stable while he was in the recovery room.

On direct examination, Crippen testified that, following his deposition, he reviewed additional records that altered his opinion as to whether the defendant had violated the standard of care. Consequently, the court issued a sua sponte side bar ruling precluding Crippen from testifying as to any opinions formed after his deposition. The jury entered its verdict in favor of the defendant on March 6, 2009. On March 16, 2009, the plaintiff moved to set aside the verdict, arguing that the court had improperly precluded the plaintiff's experts from testifying about the analgesic policy. The plaintiff argued that without the analgesic policy, she could not satisfy her burden of proof.

At a hearing on March 23, 2009, the court denied the plaintiff's motion to set aside the verdict, stating: "[T]he policy of a hospital is not equal to the standard of care. If a hospital wants to adopt a policy which requires a higher level of care, [it's] free to do so, but if [it violates] that policy, that doesn't mean [it] violated the standard of care. It defies logic to think that two medical professionals [Querim and Crippen] could have their opinions changed as to whether or not . . . the decedent . . . was stable . . . before seeing the policy, based presumably on their knowledge of the standard of care, and then, say [he] was wildly unstable after [seeing] the policy. . . . [T]he bottom line is that these two medical professionals said that [the decedent] was quite stable when they were deposed and then changed their opinions, and it defies logic that the standard of care changed between . . . six months before [trial] when their depositions were taken and at the time of trial. . . . [T]he jury heard about the policies, [and] the interpretation of the policies. . . . I think that everyone got a fair trial, and in order to accept the plaintiff's argument here [is] to accept that the experts six months before [trial] thought the standard of care—which is something really not dependent on hospital policies—was quite different from that which it was at the time of trial, and I just don't think I can accept that, so I'm going to deny the motion to set aside [the verdict]." This appeal followed.

"Our standard of review, where the trial court's action on a motion to set aside a verdict is challenged, is whether the trial court clearly abused its discretion. . . . The decision to set aside a verdict is a matter within the broad legal discretion of the trial court and it will not be disturbed unless there has been a clear abuse of that discretion. . . . A trial court has the inherent power to set aside a verdict where it finds it has made, in its instructions, rulings on evidence, or otherwise in the course of the trial, a palpable error which was harmful to the proper disposition of the case and probably brought about a different result in the

verdict. . . . It is proper for a trial court, using due caution, and in the exercise of its discretion, to set aside a verdict when satisfied that . . . its rulings on evidence were erroneous and that those erroneous . . . rulings were consequential enough to have had a substantial effect on the verdict." (Citations omitted; internal quotation marks omitted.) *Melo* v. *Spencer*, 62 Conn. App. 727, 729–30, 774 A.2d 217 (2001).

In denying the plaintiff's motion to set aside the verdict, the court set forth a well reasoned explanation for its evidentiary rulings limiting the plaintiff's experts' testimony as to the defendant's analgesic policy. In particular, the court found illogical the plaintiff's contention that the standard of care changed during the few months between the time of the plaintiff's experts' depositions and the time of their trial testimony. Accordingly, as a matter of law, the court's contested evidentiary rulings did not affect the plaintiff's ability to prove that the defendant had violated the standard of care on the date in question. Moreover, the court found that, despite its evidentiary rulings limiting Crippen's testimony as to the analgesic policy, the jury nevertheless heard testimony about the policy and its interpretation. Indeed, Querim testified that the analgesic policy was equivalent to the nursing standard of care, and that the defendant's actions fell below that standard. On the basis of her testimony, the court admitted the policy into evidence as a full exhibit. Accordingly, the contested evidentiary rulings cannot be said to have had a substantial effect on the jury's verdict. In light of the court's thorough and legally reasonable analysis, we conclude that it did not abuse its discretion in denying the plaintiff's motion to set aside the verdict.[2]

## II

The plaintiff next claims that the trial court improperly denied her motion for a new trial pursuant to General Statutes § 52-268[3] because the trial transcript was incomplete, and therefore provided an inadequate basis to brief her claims on appeal.[4] The following facts and procedural history are relevant to our review of this claim.

Following the court's denial of the motion to set aside the verdict and its judgment in favor of the defendant, the plaintiff filed an appeal and, on July 9, 2009, and ordered the trial transcript. The court reporter's office informed the plaintiff that a trial transcript did not exist because the official court reporter, Carol Marcinek, was unavailable to create the transcript, and other court reporters found Marcinek's notes to be illegible. On November 5, 2010, the plaintiff moved for a new trial on the basis of the court's "inability to construct a transcript of the trial . . . ."[5] The court denied this motion, noting that "[t]he judicial branch has been attempting and will continue to attempt to obtain an accurate transcription of the proceedings for appeal."

Thereafter, the court contracted with United Court Reporters to transcribe Marcinek's notes and produce a transcript. The reconstructed transcript was delivered to the plaintiff on March 14, 2012. The plaintiff contended, however, that it was incomplete, noting what she claimed to be hundreds of instances where testimony was omitted or only partially transcribed.

On August 2, 2012, the plaintiff filed a revised motion for rectification of the trial transcript, which the trial court granted on October 12, 2012, stating: "The plaintiff shall set forth the legal issue which will be affected by the transcript, specifying what she contends was the relevant testimony. If the defendant agrees with the plaintiff's characterization of the testimony, then there will be no need to resubmit that portion of the transcript to United Reporters. If the defendant does not agree with the plaintiff's characterization of the testimony and the testimony is relevant to an issue on appeal, then that portion of the transcript shall be resubmitted to United Reporters."

On November 28, 2012, the plaintiff filed a motion in this court seeking to stay her briefing obligations to afford her time to comply with the trial court's order of October 12, 2012. This court denied that motion, and, further, ordered the parties to provide proof of compliance with the trial court's order of October 12, 2012. Accordingly, the plaintiff submitted to the defendant a copy of the transcript with pages containing check marks denoting incomplete or missing testimony, but failing to characterize that testimony, and filed with this court a notice of her compliance with the October 12, 2012 order. Thereafter, the plaintiff filed with this court a motion for review of that order. In an order dated February 7, 2013, this court dismissed the plaintiff's motion for review and ordered her to file her brief on or before March 11, 2013, or her appeal would be dismissed.

In this appeal, the plaintiff claims that the trial court improperly denied her motion for a new trial because the trial transcript was incomplete, and therefore did not provide an adequate record for her appeal. We conclude that this claim was not properly preserved for appeal, and therefore decline to review it. First, the plaintiff did not comply with Practice Book § 61-9, which requires parties to amend their appeal to preserve any claims that arise while the appeal is pending. Here, the plaintiff never amended her appeal to challenge the court's order denying her motion for a new trial. See *Jewett* v. *Jewett*, 265 Conn. 669, 673 n.4, 830 A.2d 193 (2003) (declining to review defendant's claim challenging trial court's postjudgment order because defendant did not file amended appeal, as required by Practice Book § 61-9).

Second, insofar as the plaintiff challenges the court's October 12, 2012 order granting her revised motion for

rectification, such an order can only be contested by way of a motion for review, pursuant to Practice Book § 66-5, which provides in pertinent part that "[t]he *sole* remedy of any party desiring the court having appellate jurisdiction to review the trial court's decision on [a motion for rectification] . . . shall be by motion for review under Section 66-7." (Emphasis added.) In accordance with this section, the plaintiff filed a motion for review, which this court dismissed on February 7, 2013. Thus, the plaintiff already obtained the review to which she was entitled. See *State* v. *Crespo*, 246 Conn. 665, 669–70 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999).

In light of these procedural defects, we conclude that the plaintiff's claim regarding her motion for a new trial was not preserved for our review.

### III

Finally, the plaintiff claims that the trial court improperly (1) determined the reasonableness of the defendant's expert witness fees for their trial testimony, and (2) taxed travel costs associated with such testimony.[6] We disagree as to the plaintiff's first claim, but agree as to the second claim.

The following facts are relevant to our resolution of these claims. On March 31, 2009, the defendant submitted a bill of costs requesting, in part, payment for the trial testimony of the defendant's expert witnesses. The bill of costs specifically set forth the amounts owed for Schulman ($1500), Angelo ($2000), Pleet ($2030), and Holland ($370). The plaintiff objected to the bill of costs on April 8, 2009, arguing that there was no evidence as to the reasonableness of the experts' fees.

On April 16, 2009, the defendant responded to this objection, attaching invoices denoting the experts' hourly rates and the lengths of their trial testimony. The invoices of Pleet and Holland also set forth travel expenses of $30 and $100, respectively. The defendant's motion further asserted that "[t]he total fee for four (4) defense experts, [two] of whom were from out of state, to testify at trial [was $5900]. The fees for all [four] defense expert witnesses were [$2100] less than what the plaintiff paid to have [one of her experts] testify at trial."

On May 26, 2009, the court held a hearing on the defendant's motion to compel payment of fees. At the hearing, the court addressed the plaintiff's claim challenging the reasonableness of the defense experts' trial testimony fees. The defendant argued that because the total fees for four of its expert witnesses was $2100 less than the fees for just one of the plaintiff's experts, its fees were reasonable by comparison. The court also inquired into the basis for each of the experts' fees, as set forth in their invoices. Counsel for the defendant represented that (1) Schulman is a cardiologist with

approximately twenty years of experience, who testified for about three hours on the standard of care and causation, and prepared models to aid his testimony; (2) Angelo is a hospitalist from Yale with more than eleven years in practice, who testified for approximately an hour and a half; (3) Pleet is a urologist with more than twenty years of experience, who testified for approximately one hour and fifteen minutes as to the standard of care; and (4) Holland is a nurse with more than thirty years of experience. Ultimately, the court granted the defendant's motion to compel, stating, "I heard the doctors and nurses, and I find their fees to be reasonable." The plaintiff subsequently amended her appeal to include a claim challenging the court's determination as to the reasonableness of the experts' fees.

A

The plaintiff claims that the trial court contravened this court's decision in *Boczer* v. *Sella*, 113 Conn. App. 339, 966 A.2d 326 (2009) (*Boczer I*), by relying *solely* upon the defense experts' invoices in determining the reasonableness of their fees. In *Boczer I*, the defendant filed a bill of costs setting forth its expert witness fees. At a hearing before the court clerk, the defendant presented invoices for each expert and stated each witness' medical specialty. Id., 345. In light of this evidence, the clerk determined that the fees were reasonable. Id., 344–45. The plaintiff filed a motion for judicial review of the clerk's assessment, which the trial court denied. Id., 342. On appeal, this court concluded that "[s]tanding alone, [the] invoices do not establish that the costs stated therein are reasonable. In the absence of any evidence relating to the reasonableness of the fees listed in the invoices, we conclude that the court's determination was premised on an inadequate evidentiary foundation." (Footnote omitted.) Id., 345.

Our analysis of this claim begins with General Statutes § 52-260 (f), which provides in pertinent part that "[w]hen any practitioner of the healing arts . . . registered nurse, advanced practice registered nurse or licensed practical nurse . . . gives expert testimony in any action or proceeding, including by means of a deposition, the court shall determine a reasonable fee to be paid . . . ." "[T]he reasonableness of a particular fee is a question of fact. [W]e will upset a factual determination of the trial court only if it is clearly erroneous. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

committed." (Internal quotation marks omitted.) *Boczer I*, supra, 113 Conn. App. 344.

Trial courts frequently have applied the following multifactor test in determining the reasonableness of expert fees: "(1) the [witness'] area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality, and complexity of the discovery responses provided; (5) the fee actually charged to the party who retained the expert; (6) fees traditionally charged by the expert on related matters; and (7) any other factor likely to assist the court in balancing the interest implicated by [the applicable rule]. . . . Ultimately, however, it is in the court's discretion to set an amount that it deems reasonable." (Internal quotation marks omitted.) *Rose* v. *Jolly*, 48 Conn. Supp. 606, 607, 854 A.2d 824 (2004) (adopting multifactor test assessing reasonableness of deposition fees, under Practice Book § 13-4, from federal case, *Fisher-Price, Inc.* v. *Safety 1st, Inc.*, 217 F.R.D. 329, 333 [D. Del. 2003]); see *Young* v. *Debiase*, Superior Court, judicial district of New Britain, Docket No. CV-07-5003992-S (September 16, 2010) (50 Conn. L. Rptr. 611, 612–13) (finding experts' trial testimony fees reasonable based on multifactor test).

On remand from this court following our decision in *Boczer I*, the trial court relied upon this multifactor test in assessing the reasonableness of the experts' fees, and the plaintiff once again appealed to this court, this time challenging the trial court's determination of the reasonableness of the experts' fees. *Boczer* v. *Sella*, 135 Conn. App. 360, 363, 41 A.3d 1162 (2012) (*Boczer II*). This court concluded that the trial court's determination as to the reasonableness of the experts' fees was proper where "[e]ach witness testified as to his expertise, his experience and the basis on which he computed his fee." Id., 364. Similarly, in the present case, the court's determination as to the reasonableness of the defense experts' fees was based on the experts' expertise and experience, insofar as the court considered their trial testimony, as well as representations made by counsel for the defendant at the hearing on the defendant's motion to compel payment of fees.

At trial, the court heard testimony on both direct and cross-examination as to the experts' experience and qualifications. Also, throughout the trial, the court independently observed the length, content, and complexity of each witness' testimony. See *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 619, 830 A.2d 164 (2003) ("[a] trial court may rely on its own general knowledge of the trial itself to supply evidence in support of an award of attorney's fees" [internal quotation marks omitted]); compare *Fortier* v. *Salm*, Superior Court, judicial district of Hartford, Docket No. CV-02-0813312-S (October 27, 2009) (48 Conn. L. Rptr. 702)

(costs taxed by presiding judge at trial), with *Boczer I*, supra, 113 Conn. App. 344–45 (costs taxed by clerk).[7]

Additionally, at the hearing on the defendant's motion to compel payment of fees, counsel for the defendant recited the particular specialties, years of experience, and length and contents of each expert's testimony. Moreover, counsel for the defendant presented evidence of "the prevailing rates of other comparably respected available experts" through its representation that the fee for one of the plaintiff's experts was over $2000 more than the fees for four of the defendant's experts. See *Fortier* v. *Salm*, supra, 48 Conn. L. Rptr. 703 (finding defense expert witness fees reasonable where fees were lower than those charged by plaintiff's experts); *Brought* v. *Batson*, Superior Court, judicial district of Danbury, Docket No. CV-02-0347176-S (December 17, 2003) (36 Conn. L. Rptr. 189, 192) (finding expert's flat fee unreasonable as compared to prevailing rates of comparable experts and assessing reasonable fee).

Thus, contrary to the plaintiff's contention, the court did not rely *solely* upon the experts' invoices in determining that their fees were reasonable. Rather, the court's determination was supported by evidence of the experts' "expertise . . . experience and the basis on which [they] computed [their] fee[s]." *Boczer II*, supra, 135 Conn. App. 364. Therefore, we conclude that the court properly determined that the fees charged by the defendant's expert witnesses were reasonable.

B

Finally, the plaintiff claims that the trial court improperly taxed the plaintiff with the travel costs associated with the defendant's expert witness fees. "The question of whether trial costs are taxable is a question of law over which our review is plenary." *Smith* v. *Andrews*, supra, 289 Conn. 81. Pursuant to § 52-260 (f), "[w]hen any practitioner of the healing arts . . . registered nurse, advanced practice registered nurse or licensed practical nurse . . . gives expert testimony in any action or proceeding, including by means of a deposition, the court shall determine a reasonable fee to be paid . . . and taxed as part of the costs in lieu of all other witness fees payable to [them] . . . ." This statute "neither authorizes a reasonable fee for an expert's trial preparation time as distinguished from his or her in-court trial testimony, nor expressly authorizes costs for an expert's travel, transportation and hotel costs. . . . [B]y its express terms, § 52-260 (f) treats as taxable only those costs that arise from an expert's testimony at trial." (Citation omitted; internal quotation marks omitted.) *Smith* v. *Andrews*, supra, 87.

Here, the invoices of Pleet and Holland delineate their travel expenses.[8] Specifically, Pleet's invoice sets forth a $30 travel expense based on sixty miles of travel at

fifty cents per mile. Holland's invoice sets forth a $100 charge for 140 miles at fifty cents per mile. We conclude that the trial court improperly taxed Pleet's and Holland's travel expenses to the plaintiff in violation of § 52-260 (f).

The judgment is reversed only with regard to the taxing of Pleet's and Holland's travel costs and the case is remanded with direction to recalculate costs consistent with the preceding paragraph; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] On February 7, 2013, this court granted the plaintiff's motion to substitute Karen Mae Homes-Previti, the administratrix of the estate of Arnold F. Holmes, as the party plaintiff.

[2] Notably, the defendant argues that the plaintiff did not properly preserve for appeal her claim challenging the court's denial of her motion to set aside the verdict, predicated on improper evidentiary rulings, because the plaintiff failed to take exception to such contested evidentiary rulings at trial. See *State* v. *Jorge P.*, 308 Conn. 740, 754, 66 A.3d 869 (2013) ("the determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated below with sufficient clarity to place the trial court on reasonable notice of that very same claim"). We need not address, however, whether the plaintiff properly preserved for our review an evidentiary claim because the issue presented on appeal is whether the court improperly denied the plaintiff's motion to set aside the verdict—not whether the court made improper evidentiary rulings. Cf. *Rubel* v. *Wainwright*, 86 Conn. App. 728, 745–46, 862 A.2d 863 (holding that plaintiff's claim challenging court's evidentiary ruling was not preserved for appeal where it was raised for first time in motion to set aside verdict), cert. denied, 273 Conn. 919, 871 A.2d 1028 (2005).

Additionally, in connection with her claim that the court improperly denied her motion to set aside the verdict, the plaintiff appears to argue that her ability to fully and fairly litigate the case was unduly prejudiced by the defendant's failure to produce the analgesic policy in response to the plaintiff's request for the defendant's policies pertaining to the transfer of patients. We conclude that this aspect of the claim was not preserved for our review because the court did not address it in its denial of the plaintiff's motion to set aside the verdict. An explanation of the court's decision regarding this claim is necessary to our determination of whether the court properly exercised its discretion. "Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting this claim would be entirely speculative." (Internal quotation marks omitted.) *Keith E. Simpson Associates, Inc.* v. *Ross*, 125 Conn. App. 539, 544 n.7, 9 A.3d 394 (2010).

[3] General Statutes § 52-268 (a) provides: "Any party who intends to appeal or has appealed a final judgment of the Superior Court, or of a judge thereof, an appeal from which properly lies, may move the court in writing for a new trial if the judge who rendered judgment, or the stenographer or court reporter who took the testimony at the original trial therein if his stenographic notes are not decipherable, has died or become incapable of taking the action necessary for the appeal, and the party had complied with the rules relating to the taking of appeals before such death or incapacity."

[4] Practice Book § 61-10 (a) provides that "[t]he appellant shall determine whether the entire trial court record is complete, correct and otherwise perfected for presentation on appeal. . . . [T]he term 'record' . . . includes all trial court decisions, documents and exhibits necessary and appropriate for appellate review of any claimed impropriety."

[5] The plaintiff's motion was actually titled "motion for mistrial" instead of "motion for new trial." The substance of the motion, however, is consistent with a motion for a new trial, pursuant to Practice Book § 42-53 and General Statutes § 52-268 (a). Therefore, we will treat this motion as a motion for a new trial in light of the well settled principle that "[i]t is the substance of a motion . . . that governs its outcome, rather than how it is characterized in the title given to it by the movant." *State* v. *Taylor*, 91 Conn. App. 788, 792, 882 A.2d 682, cert. denied, 276 Conn. 928, 889 A.2d 819 (2005).

[6] At oral argument before this court, the plaintiff conceded that she is not challenging the reasonableness of the defense experts' deposition fees.

[7] In fact, at the hearing on the defendant's motion to compel payment of

fees, the trial court distinguished *Boczer I*, supra, 113 Conn. App. 339, from the present case, concluding that, in *Boczer I*, the clerk, and not the presiding judge at trial, had determined the reasonableness of the experts' fees in the first instance.

[8] To the extent that the plaintiff claims that the court improperly taxed the travel expenses of Schulman and Angelo, we conclude that she failed to demonstrate that the court factored travel costs into their fees. We "do not presume error on the part of the trial court. . . . Rather, we presume that the trial court, in rendering its judgment . . . undertook the proper analysis of the law and the facts." (Citations omitted; internal quotation marks omitted.) *Brett Stone Painting & Maintenance, LLC* v. *New England Bank*, 143 Conn. App. 671, 681, 72 A.3d 1121 (2013).

---